# Roth & Roth, LLP
192 LEXINGTON AVENUE, SUITE 802, NEW YORK, NEW YORK 10016
ROTHANDROTHLAW.COM T: (212) 425-1020 F: (212) 532-3801

September 30, 2024

**Via ECF**
Hon. Mark Pedersen
United States Magistrate Judge
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

      Re: *Howard v. City of Rochester et al.* 23-cv-6561 (FPG) (MJP)

Your Honor,

      We write on behalf of Plaintiff Darius Howard ("Plaintiff") to clarify why the motion for unsealing of records has not been submitted as a joint motion, as directed by Your Honor. *see* Sept. 3, 2024 Text Order, We also write to bring to the Court's attention a deeply troubling disclosure today by Defendant County of Monroe ("the County"), which suggests that the County may have unlawfully obtained the records at issue in the motion related to the underlying criminal conviction giving rise to this action, as well as records regarding completely unrelated and sealed criminal matters involving Plaintiff, in violation of New York Criminal Procedure Law § 160.50. Plaintiff respectfully requests a conference with the Court at its earliest convenience to address this very serious matter.

**I. Background**

      What began as a routine process to file a joint motion has uncovered a potentially disturbing practice by the County that flies in the face of established law. The sequence of

1

events, documented in the emails attached Exhibit 1, reveals a possible willful violation of New York Criminal Procedure Law § 160.50:

1. At 1:13 PM, we sent our draft joint motion papers to Defendants for their review, as directed by the Court.

2. At 2:16 PM, counsel for the County, Adam Clark ("Mr. Clark") responded requesting that the relief sought in the motion be expanded to encompass other sealed files from unrelated criminal prosecutions, rather than just the particular arrest at issue in this case, and acknowledged that the County "ha[d] other files other than for this particular arrest, some of which are also sealed."

3. We sought clarification about this alarming disclosure, and informed Mr. Clark that if he already had possession of the files, then he could simply release them to us now, since we had provided a CPL § 160.50 authorization signed by our client, which permitted release of the records related to the criminal prosecution giving rise to this lawsuit.

4. From there, Mr. Clark's responses became increasingly evasive and defensive.

5. At 2:55 PM, Mr. Clark stonewalled our inquiries, stating that the County Defendants are "not releasing anything until the Court says it's ok" and that "[t]he County Defendants are also not agreeing to release anything unless the Plaintiff gives an authorization for his entire record . . . ."

6. When pressed further about their possible unauthorized and unlawful possession of Plaintiff's sealed criminal files, Mr. Clark responded at 3:29 PM that such information was "privileged and not relevant to the question."

7. In an apparent attempt to retroactively justify their unauthorized access, Mr. Clark claimed at 4:56 PM that we had signed a stipulation to unseal all of Plaintiff's records on

2

August 14th. This is untrue, since that stipulation pertained only to records related to the arrest underlying this case. *See* ECF No. 24 at 1 ("Plaintiff commenced this civil action pertaining to those sealed charges and the parties consent to unsealing of those charges . . . ."). Moreover, that "stipulation" was never "So Ordered" by the Court, and thus did not provide lawful authority for the County to access the sealed records.

8. We then had a meet and confer telephone call at 4:29 PM that lasted two minutes.

9. At 4:38 PM, I sent an email summarizing a meet and confer phone call that had just taken place between myself, my co-counsel and Mr. Clark. During this call, Mr. Clark refused to directly answer whether he, the law department, or only the District Attorney's office already possessed our client's sealed criminal files from the prosecution underlying this incident and the unrelated criminal prosecution files he had previously referenced. When pressed, Mr. Clark deflected, asking why it mattered who had the files. We explained that any possession of these sealed files without proper authorization would violate CPL 160.50. We also reiterated that the limited authorization exchanged today only covered the underlying criminal case in this matter, not the other sealed records Mr. Clark had previously admitted to possessing. Mr. Clark's evasive responses during this call further heightened our concerns about the County's apparent disregard for the sealing statute.

10. Mr. Clark then claimed that the unsealing stipulation that co-counsel had signed and submitted to be "So Ordered" by the Court, but which was never "So Ordered", provided authorization for them to apparently access the sealed records.

11. Our final communication at 4:58 PM reiterated the gravity of the situation, emphasizing that since the Court did not sign the proposed stipulation, and we never provided an

unsealing authorization from our client, their possession of sealed records constitutes a clear violation of the statute.

## II. Argument

The County's apparent possession of Mr. Howard's sealed criminal records, both related and unrelated to the underlying case, represents an inexcusable breach of New York Criminal Procedure Law § 160.50.

New York's highest court has repeatedly and unequivocally emphasized the paramount importance of § 160.50 in protecting the rights of individuals against whom criminal charges have been brought but not proven. The Court of Appeals' decisions in *People v. Patterson*, 78 N.Y.2d 711 (1991), and *Matter of Harper v. Angiolillo*, 89 N.Y.2d 761 (1997), leave no room for ambiguity: sealed records are sacrosanct, protected by a "presumption in favor of sealing" that can only be overcome by specific statutory exceptions.

Furthermore, the Court of Appeals has emphasized that § 160.50 "is designed to protect the rights of individuals against whom criminal charges have been brought, but which did not ultimately result in a conviction." *Matter of Harper v. Angiolillo*, 89 N.Y.2d at 766. This underscores the critical importance of maintaining the integrity of sealed records, particularly where charges did not result in conviction.

The stringent protections afforded by § 160.50 are not mere technicalities to be casually disregarded by government entities. As the Court of Appeals stated in *Katherine B. v. Cataldo*, 5 N.Y.3d 196, 203 (2005), "the general proscription against releasing sealed records and materials is subject only to a few statutory exceptions." While this statute allows for access to sealed records in very limited circumstances, *see* N.Y. Crim. Proc. Law § 160.50(d)(i–vi), it does not allow for sealed records to be accessed by a police department, District Attorney's Office, and/or

corporation counsel's office for the purposes of civil litigation absent an unsealing authorization executed by the plaintiff, or an unsealing Order issued by the Court. *See id.*

**B. Apparent Violations of § 160.50**

Based on the email communications annexed hereto as Exhibit 1, it appears that the County accessed Mr. Howard's sealed criminal records prior to Plaintiff providing any authorization signed by our client, and without the Court signing an unsealing order. Earlier today, we provided only a limited authorization for unsealing records specific to the arrest and prosecution underlying this case, *People v. Darius Howard*, Ind. No. 2016-154, when we sent a copy of our proposed joint motion – but this is the only lawful authorization for the County to access any of Mr. Howard's sealed criminal records.

Even more alarming is the County's casual admission of possessing "other files other than for this particular arrest, some of which are also sealed." This statement flies in the face of the sealing statute, suggesting a troubling pattern of unauthorized access to sealed records that may expand far beyond the scope of the current litigation.

These actions don't merely skirt the edges of legality; they completely ignore the "presumption in favor of sealing" established by § 160.50 and reaffirmed in *Matter of New York State Comm'n on Judicial Conduct v. Rubenstein*, 23 N.Y.3d 570, 580 (2014). The County's failure to identify any statutory exception permitting their access, coupled with their evasive responses and improper claims of privilege, is deeply disturbing and suggests deliberate violations of Mr. Howard's rights and the law.

**C. Implications of the Violation**

The unauthorized access and possession of sealed records have far-reaching implications:

1. <u>Prejudice to Mr. Howard</u>: The very purpose of § 160.50, as articulated in *Patterson*, is to ensure that the accused is free from the adverse consequences of unproven criminal charges. 78 N.Y.2d at 716. The County's actions have potentially exposed Mr. Howard to precisely the kind of prejudice the statute aims to prevent. And courts uniformly agree that preclusion from trial of evidence or testimony relating to sealed arrest and prosecution records obtained in violation of Section 160.50 is appropriate. *See, e.g.*, *Matter of Dondi*, 63 N.Y.2d 331, 336–39 (1984); *Property Clerk of N.Y. City Police Dept. v. Taylor*, 237 A.D.2d 119, 120 (1st Dept 1997); *People v. Seeley*, 179 Misc. 2d 42, 52 (Sup Ct, Kings County 1998); *cf. Michelson v. United States*, 335 U.S. 469, 482 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty.").

2. <u>Integrity of the Legal Process</u>: The County's apparent disregard for the sealing statute undermines the integrity of the legal process. As noted in *Harper*, the sealing provision is "essential to the operation of the statutory scheme." 89 N.Y.2d at 766. By flouting these provisions, the County threatens the foundational principles of our justice system.

3. <u>Broader Systemic Concerns</u>: If the County has engaged in this practice with Mr. Howard's records, it raises alarming questions about potential systemic violations affecting other individuals whose records should be protected by § 160.50.

**D. Need for Immediate Intervention**

Given the serious nature of these violations, immediate court intervention is warranted. The Court of Appeals has recognized that "the remedy for the government's breach of its statutory promise of confidentiality is a judicial proceeding" to enforce compliance. *Green v. Montgomery*, 95 N.Y.2d 693, 701 (2001); *Lino v. City of New York*, 101 A.D.3d 552, 557 (1st

Dept 2012) (holding that individuals have private rights of action to seek enforcement of CPL § 160.50). We urge the Court to exercise its authority to enforce the statute and protect Mr. Howard's rights.

## III. Conclusion

The gravity of this situation cannot be overstated. The County's actions represent not just a violation of Mr. Howard's rights, but a challenge to the integrity of our legal system. We request an immediate conference with Your Honor to address these egregious violations and to determine the full extent of the County's unauthorized access to sealed records.

In light of these shocking developments, we are compelled to file our motion to unseal separately, limited strictly to the records for which Mr. Howard has provided authorization. This approach is necessary to protect our client's interests while the Court grapples with the far-reaching implications of the County's apparent disregard for the law.

We stand ready to discuss this matter at the Court's earliest convenience and eagerly await your guidance on how to proceed in the face of such blatant misconduct.

Respectfully submitted,

**Roth & Roth, LLP**

/s/Elliot Shields

**Kopke Christiana & Rastetter LLP**

/s/Clyde Rastetter

*Attorneys for Plaintiff*