# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

**Darius Howard,**

        Plaintiff,

   v.

**The City of Rochester, et al.,**

        Defendants.

**DECISION and ORDER**

23-cv-6561-FPG-MJP

---

## APPEARANCES

**For Plaintiff:**

**Clyde M. Rastetter, Esq.**
Kopke Christiana & Rastetter LLP
199 Cook St, Ste 308
Brooklyn, NY 11206

**Elliot D. Shields, Esq.**
Roth & Roth LLP
192 Lexington Ave, Ste 802
New York, NY 10016

**For the County Defendants:**

**Adam M. Clark, Esq.**
Monroe County Law Dep't
39 W Main St
Rochester, NY 14614

**For the City Defendants:**

**Christopher Noone, Esq.**
City of Rochester Law Dep't
City Hall, Rm 400-A
30 Church St
Rochester, NY 14614

## INTRODUCTION

**Pedersen, M.J.** The New York State Legislature has given invaluable protection to those who obtain favorable termination of a

prosecution against them: Automatic sealing of the record. Criminal Procedure Law § 160.50 ("Section 160.50") grants this protection. Section 160.50 states: "Upon the termination of a criminal action or proceeding against a person in favor of such person … the record of such action or proceeding shall be sealed." C.P.L. § 160.50. And Section 160.50's counterpart, Criminal Procedure Law § 160.60 ("Section 160.60"), states that arrests and prosecutions falling within Section 160.50's ambit "shall be deemed a nullity."

Making arrests and prosecutions a "nullity," the New York State Legislature reasoned, would "provide[] that a favorably terminated criminal prosecution 'shall not operate as a disqualification of any person so accused to pursue or engage in any lawful activity, occupation, profession, or calling[.]'" *D.S. v. City of Peekskill*, No. 12-CV-4401 KMK, 2014 WL 774671, at *3 (S.D.N.Y. Feb. 27, 2014) (alterations added) (quoting C.P.L. § 160.60), *aff'd on other grounds*, 581 F. App'x 65 (2d Cir. 2014). "The Legislature created further protection by making it an unlawful discriminatory practice for any person or agency to inquire into a favorably terminated criminal action or take any adverse action in connection with such action in regard to licensing, hiring for employment,

or providing credit or insurance to an individual." *Id.* (citing N.Y. Exec. L. § 296(16)).[1]

The plain text of these statutory provisions leaves no doubt: "Upon the termination of a criminal action or proceeding against a person in favor of such person," the benefits of Sections 160.50 and 160.60 flow *to that person.* C.P.L. § 160.60; *see also People v. Anonymous*, 34 N.Y.3d 631, 637 (2020) (Sections 160.50 and 160.60 "clearly intend[] that the criminal action and proceedings be treated as if they never occurred—as if they are not part of [the] defendant's past." (alterations added)). True, Sections 160.50, 160.60, and their enforcement mechanisms "do[] not protect a constitutional liberty interest[.]" *D.S.*, 2014 WL 774671, at *4 (citing *People v. Patterson*, 78 N.Y.2d 711, 716 (1991) (alterations added) ("The legislative history of [Section] 160.50 does not at all support an intent on the part of the Legislature to create a constitutionally derived right." (alteration added)). Even so, the Legislature enacted a statutory scheme intended "to remove any 'stigma' flowing from an accusation of criminal conduct terminated in favor of the accused[.]" *Patterson*, 78 N.Y.2d at 716. As a comprehensive statutory scheme

---

[1] A New York trial court has held a separate subdivision of this statute unconstitutional. *See People by James v. Commons W., LLC*, 80 Misc. 3d 447, 452 (N.Y. Sup. Ct. 2023) ("Accordingly, Executive Law § 296(5)(a)(1) is unconstitutional to the extent that it makes it an unlawful discriminatory practice to refuse to rent or lease housing accommodations to any person, or group of persons, because their source of income includes Section 8 vouchers.")

enacted in harmony with the presumption of innocence, Sections 160.50 and 160.60 demand this Court's respect. *People v. Anonymous*, 34 N.Y.3d at 637 ("[T]he Legislature's objective in enacting [Section] 160.50 … was to ensure that the protections provided be 'consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law.'" (alterations added) (quoting *Patterson*, 78 N.Y.2d at 716)).

But what about a plaintiff who wants to vindicate his or her federal civil rights after alleged misconduct by police and prosecutor? Sealed 160.50 records could prove essential to that plaintiff's case. For Plaintiff Darius Howard, the text of Section 160.50(1)(d) provides part of the answer: "[S]uch records shall be made available to the person accused or to such person's designated agent[.]" *See also United States v. Ceballo*, No. 03 CR. 283 (SWK), 2003 WL 21961123, at *2 (S.D.N.Y. Aug. 18, 2003) (Section "160.50(1)(d) provides an exception for a request for [160.50] records when" that request is "made by the accused." (alteration added)). While under Section 160.50(1)(d) a plaintiff (and former accused) may only obtain *official* records, as Howard rightly points out, federal law governs this case. A federal court may unseal a plaintiff's *unofficial* records, if appropriate.

Despite the supremacy of federal law, the statutory framework of Section 160.50, and the plain text of Section 160.50(1)(d), Defendant Monroe County asks that this Court require Howard to go first to state court to unseal his 160.50 records. The County believes that only this approach respects comity, the balance between federal and state government.

Howard disagrees. Howard asks this Court to unseal his 160.50 records related to his prosecution in *People v. Darius Howard*, Index No. 2016-154. For ease of reading, the Court refers to the records related to this prosecution as "Howard's 160.50 records." Howard made a discovery request for his 160.50 records in this case, a case he brought under 42 U.S.C. § 1983 to vindicate his federal civil rights based on alleged misconduct by police and prosecutor. With his discovery request, and because federal procedural law controls, Howard argues that this is enough to unseal his 160.50 records. Yet the County has refused to hand over his 160.50 records absent a court order. Indeed, as stated, the County would like the parties to try to obtain such an order first from state court. Howard also reasons that the authorizations he provided by Section 160.50(1)(d) should be enough to release his 160.50 records (or at least his official records).

It is time for this Court to resolve some questions about comity and unsealing that have sprung up around Section 160.50. Both parties

5

deserve to know where this Court stands. But this decision is necessarily a narrow one.

Here, the stars align for Howard. By granting an order unsealing Howard's 160.50 records and compelling their production, this Court respects the statutory scheme of Sections 160.50 and 160.60. As discussed, Howard is the beneficiary of this statutory scheme. And so, Howard's right to obtain at least his official 160.50 records is undeniable. After all, Section 160.50(1)(d) uses the mandatory term "shall" for accuseds like Howard who seek their records. The Court likewise finds that the parties' dispute is properly in federal court because Howard made a discovery request for his 160.50 records that included the MCDA and the County. To the extent necessary, the Court finds that the County and MCDA have objected to producing these records.

So, while the Court acknowledges the possibility that Howard and other plaintiffs like him may need the 160.50 records of others wrongly accused or prosecuted by the Monroe County District Attorney's Office ("MCDA") to show a pattern or practice of constitutional violations, that is not a question before the Court today. As Justice Jackson's maxim goes, "[o]ther cases presenting different allegations and different records may lead to different conclusions." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 507 (2023) (Jackson, J., concurring). So too here.

## BACKGROUND

Howard sued under 42 U.S.C. § 1983, alleging several civil rights violations stemming from his September 2015 arrest and later prosecution. Howard brings claims against the County of Monroe, Monroe County Assistant District Attorney ("ADA") Darren Pilato, the City of Rochester, and Rochester Police Department Officer Jonathan Laureano. Howard alleges that the misconduct of these defendants resulted in his "years-long prosecution and wrongful conviction for a crime he did not commit." (Compl. ¶ 2, ECF No. 1.) The criminal case against him, Howard alleges, was built on lies by police and prosecutor.

### A.    Howard's claim against the County rests on two seminal Supreme Court cases.

Howard's sole claim against the County is based on the MCDA's alleged failures while prosecuting him. Howard's lone claim against the County is premised on *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The teaching of *Monell* is straightforward and well-known: Municipalities and other bodies of local government are "persons" within the meaning of 42 U.S.C. § 1983. *Id.* at 690. And so, municipalities may be sued if they cause a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* Beyond official acts, the Supreme Court also held that a plaintiff may sue "for constitutional deprivations visited pursuant to governmental

'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690–91. Similarly, a municipality may also be liable "under the so-called 'failure to train' theory … where the failure to train amounts to deliberate indifference." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). This background on *Monell* is necessary to understanding Howard's claim against the County.

In this case, Howard alleges a constitutional tort under *Brady v. Maryland*, 373 U.S. 83 (1963). Brady's teaching is at least as well-known as that of *Monell*: The government must disclose to a defendant in a criminal case all "evidence favorable to" him or her regardless of whether the defendant requests as much. *Id*. at 87.

With *Monell* and *Brady* in mind, Howard's claim against the County is that the ADA prosecuting him "failed to disclose critical exculpatory and impeachment evidence to [Howard] before, during, or after his trial." (Compl. ¶ 199, ECF No. 1 (alteration added).) Accordingly, Howard contends that the evidence Defendants did not hand over "would have directly contradicted or undermined testimony and evidence supplied by" the police officer responsible for Howard's arrest. (*Id*. ¶ 200.) For purposes of these claims, Howard alleged that the MCDA "was and is an agency and/or subdivision of the County." (*Id*. ¶ 16.)

8

**B.    Howard requests that the County produce his sealed criminal records given his *Monell* claim against the County.**

Perhaps with that allegation in mind, Howard requested documents from—as his document requests indicate—the County and MCDA. On May 1, 2024, he asked the County for "a complete copy of all records related to [his] criminal prosecution[.]" (Rastetter Decl. in Supp. of Mot. to Unseal ¶ 3, ECF No. 28-1, Sept. 30, 2024 (alterations added).[2]) Howard wanted these records because "these materials are highly relevant to the causes of action asserted herein." (*Id*.) The County does not dispute this.

The County and MCDA did not object based on section 160.50 specifically, asserting only boilerplate objections about confidentiality. (Resp. to Pl.'s RFPs at 1,[3] ECF No. 44-1 (including perfunctory general objection to producing "[c]onfidential information and/or documents, except as a suitable protective order is entered" and to delivering "information and/or documents subject to the attorney/client privilege, or any other privilege"). On May 31, the County responded:

> Defendants do not have any such documents ready to disclose at this time. Defendants continue to review,

---

[2] The County included a copy of Howard's first set of requests for production as Exhibit 1 to its declaration in response to Howard's request for a hearing regarding sanctions. (ECF No. 34, Oct. 14, 2024.) It was here that Howard requested his 160.50 records. (*Id*. at 7–8.)

[3] Attached as Exhibit A to this decision and order. Thus, this and other exhibits are included as attachments to this decision and order, which is ECF No. 44.

> investigate, and locate and compile documents in this mat-
> ter and will make a good faith effort to disclose all available
> relevant documents in a timely manner.

(*Id.* at 3.) The County offered similar cursory responses for nearly all of

Howard's requests for production.[4] Recognizing the County's incomplete

responses, Howard wrote a deficiency letter to the County in June 2024

after the 30-day deadline under Fed. R. Civ. P. 34(b)(2)(A) had passed.

---

[4] The County's discovery responses are lacking. Fed. R. Civ. P. 34(b)(2)(A) requires the answering party to "respond," and the Court takes this to mean a meaningful response because, as Rule 34(b)(2)(B) mandates:

> For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

The County's response did not state the any time for producing the documents. Nor does it appear that the County made a serious effort at ascertaining whether "inspection and related activities will be permitted as requested." *Id.* The Court appreciates, however, the parties' efforts to resolve these deficiencies without requiring a conference. Even so, the County's discovery responses here are not acceptable. *See Finkelstein v. Bical*, No. 23-CV-00049-LDH-SJB, 2023 WL 9119575, at *2 (E.D.N.Y. Dec. 14, 2023) ("Document requests are not memory tests. That a party is not aware of responsive documents does not remove its obligation to produce them. It must search for responsive documents, and then after performing a reasonable search, it can state it is not in possession of responsive documents.").

**C.    The parties ask this Court to so-order a stipulation because the County wanted a court order to unseal Howard's 160.50 records.**

Between June and August, it appears that Howard learned his 160.50 authorization alone was insufficient for the County. The County wanted a court order. (Rastetter Decl. in Supp. of Mot. to Unseal ¶ 3, ECF No. 28-1 ("Defendants have indicated that an unsealing order must be entered before they will produce these records[.]").) It seems that the parties negotiated a solution, asking this Court to order the unsealing[5] of Howard's "official records and papers" related to criminal charges against him. (Proposed Stipulation and Order, ECF No. 24, Aug. 14, 2024.) Under the parties' agreement, the County Attorney's office would gather Section 160.50 records from the MCDA, providing them to Howard's counsel. (*Id*. ¶¶ 3–4.)

After reviewing the parties' proposed stipulation, the Court communicated its concern "with executing the stipulation because of issues of comity between this Court and the New York State Court system." (Text Order, ECF No. 26, Sept. 3, 2024.) The proposed stipulation and order contained language overstepping this Court's jurisdictional bounds. For example, under the proposed stipulation and order, the Court would have directed that "[a]ll orders to seal charges relating to

---

[5] The language in the proposed stipulated order "vacated" New York State Supreme Court Justice Renzi's sealing order. More on how that language was too broad in the pages that follow.

any criminal charges against the Plaintiff by the Monroe County District Attorneys [sic] Office (MCDA), whether issued by a Court or created by operation of law, are vacated." (*Id.* ¶ 1 (alterations added).) Similarly, the proposed stipulation and order mandated that "[a]ll official records and papers related" to Howard's criminal charges be unsealed.[6] (*Id.* ¶ 2.) While the Court believed it ultimately could unseal at least some of Howard's records, the Court disagreed with the parties' language about vacating state court orders.

The parties responded by email, outlining their positions about this Court's authority to order the unsealing of Howard's 160.50 records and the vacatur of corresponding state court orders. (Text Order, ECF No. 26 (noting that "[t]he parties helpfully replied with [ ] information and with case law about this Court's general authority to order release of sealed documents otherwise protected by Section 160.50" (alterations added)).) Because of the Court's concerns, however, the Court asked the parties to move together to unseal Howard's 160.50 records by September 30, 2024. (*Id.* ("To ensure that it is apparent on the docket what the

---

[6] This is not one of the methods federal courts have used to handle the unsealing of 160.50 records. *See, e.g., Thomas v. Mason*, No. 117CV626GTSDJS, 2018 WL 11247055, at *2 (N.D.N.Y. June 25, 2018) (discussing the options for unsealing 160.50 records, none of which involves the federal court issuing such an order); *Schomburg v. N.Y. City Police Dep't*, 298 F.R.D. 138, 142 (S.D.N.Y. 2014) (rejecting district attorney's objections to third-party discovery because "[w]hen a plaintiff asserts federal claims 'the state sealing statute [Section 160.50] does not govern'" (alterations in original) (quoting *Haus v. City of New York,* No. 03-CV-4915, 2006 WL 3375395, at *2 (S.D.N.Y. Nov. 17, 2006))).

Court is doing and why, and to ensure that the unsealing of documents is warranted in this case, the Court directs the parties to file a joint motion by no later than September 30, 2024, for the relief their proposed order seeks.").) The Court wanted to proceed carefully with a memorandum of law on the docket that memorialized the Court's authority to vacate state court orders wholesale if that was what the parties would continue to request. Indeed, the Court noted at oral argument that its concern was with the breadth of the proposed stipulation and order, not necessarily with unsealing Howard's 160.50 records.

The parties did not move together to unseal Howard's 160.50 records. Instead, Howard alone moved to unseal them.

## C. After the Court expresses concern about the language in the parties' proposed stipulation and order, Howard moves to unseal his 160.50 records.

Howard moved—alone at first—to unseal his 160.50 records. Howard argues that this Court has "the authority to unseal state criminal records when they are relevant to a federal lawsuit and the district attorney is a party to the proceeding." (Mem. of Law at 3, ECF No. 28-4, Sept. 30, 2024 (collecting cases).) It was not apparent then whether this Court could order the Monroe County District Attorney to produce Howard's 160.50 records. Indeed, although the Court now agrees with Howard after additional briefing, Howard gave no argument about how exactly the MCDA was a party to this case. The Court thus remained

hesitant to grant the motion. Happily, the plain language of Section 160.50 provided another path.

On reviewing the language of Section 160.50(1)(d), the Court concluded that a court order should not be needed. So, the Court queried the parties asking why a court order was necessary when the language of Section 160.50(1)(d) is unambiguous: "[S]uch records shall be made available to the person accused or such person's designated agent[.]" (Emails dated Oct. 2, 2024, between Court staff and counsel, on file.) The Court was unaware that the statute's language anticipates Mr. Howard having access only to official materials under Section 160.50(1)(d).

Responding, the County Attorney stated that the MCDA takes the position "that since the documents are sealed by Court order, [they] should be unsealed by Court order also." (*Id.* (alteration added).) A later email from the ADA responsible for that office's involvement in this case explains the County and MCDA's position: "It is [ ] my position that procedurally, an application ought to be made first [ ] to Supreme Court Justice Alex R. Renzi for an unsealing order as it was Supreme Court that issued a sealing order in the first instance."[7]  (Email dated Oct. 16,

---

[7] There is case law—albeit non-binding—suggesting its position. *See, e.g., Thomas v. Prinzi*, No. 15-CV-6061W, 2016 WL 5334439, at *2 (W.D.N.Y. Sept. 23, 2016) (noting that requests for 160.50 records "should be made, in the first instance, to the court that issued the sealing order").

2024, on file (alterations added).) That email was the first unambiguous indication that a state court had issued a sealing order in Howard's underlying case.[8]

## D. The County joins—then opposes—Howard's motion to unseal.

After the Court questioned the necessity of an order, the County Attorney joined Howard's motion to unseal. (Letter at 1, ECF No. 30, Oct. 8, 2024 ("Upon review, the County has decided [ ] to not oppose and to join in Plaintiff's motion to unseal the file" noted in "ECF No. 28." (alteration added)).) The County Attorney repeated that this was done "on review[.]" (*Id.*) However, the County Attorney noted that the motion was not moot because the County "believe[s] that an order is necessary in order to unseal the file in question." (*Id.*) The Court could thus treat Howard's motion to unseal, (ECF No. 28), as unopposed.

Howard responded in a letter the same day. (ECF No. 31.) First, Howard accepted the County's joinder of his motion. But he asked the

---

[8] The Court questions whether this order had any effect. Section 160.50 is unambiguously self-effectuating: "[T]he record of such action or proceeding shall be sealed." N.Y. Crim. Proc. L. § 160.50(1). So, no court order is needed to seal documents. *See* N.Y. Crim. Proc. L. § 160.50 Practice Commentary ("Procedurally, since the 1991 legislation, the clerk of the court, rather than the court by court order, seals the court records and notifies the appropriate agencies to take the action required of them under the statute."); *see also Harper v. Angiolillo*, 89 N.Y.2d 761, 764 (1997) ("County Court dismissed the indictment due to insufficient evidence of accessorial liability. County Court also denied the People leave to re-present the case to another Grand Jury. The criminal proceeding terminated in petitioner's favor upon entry of the County Court order … and the record of the proceeding was sealed pursuant to CPL 160.50." (internal citation omitted)).

Court to convert the motion into a motion to compel. (*Id*. ("We also believe that pursuing an unsealing order in this instance would be a waste of time and judicial resources. Therefore, we respectfully request that the Court treat this motion as a motion to compel and award Plaintiff's attorneys their fees pursuant to Rule 37(a)(5)(A), as the necessity for this motion should have been avoided.").)

Just three days later and facing a possible motion to compel,[9] the County did a U-turn. (ECF No. 32, Oct. 11, 2024.) The County urged this

---

[9] Between October 8 and October 11, the Court informally communicated with the parties about their respective positions and urged the County to see if there was a way to provide Howard at least some of his 160.50 records with only Howard's signed authorization. The Court was confident that Section 160.50(1)(d) required the MCDA to hand over *something*—though perhaps not *all* the records Howard requested if any implicated privacy interests other than Howard's (which he may have waived in bringing this case). Yet the County refused to hand over *anything* without a new discovery request. (Letter at 2, ECF No. 32 (Howard's "current discovery demands and motion for an unsealing order are not limited to only the 'official records and papers' in the District Attorney's file. If [Howard] submits a request for only the 'official records and papers,' the District Attorney's Office will review the file and provide only those documents." (alteration added)).) The County is wrong.

*First*, the Court finds that the County forfeited any objection to the form of Howard's discovery request. As discussed, the County made no specific objection to Howard's discovery requests relating to his 160.50 records (overbreadth, e.g.). *See supra* n.4. The County offered only boilerplate general objections at the outset of its response to Howard's first set of requests for production. That is insufficient. *See United States v. Veeraswamy*, ___ F.R.D. ___, No. 23-CV-9379, 2024 WL 4762899, at *5 (E.D.N.Y. Nov. 13, 2024) ("Discovery responses beginning 'with a long recitation of General Objections' that amount to 'global, generalized objections to each request' are no longer permitted under the 2015 Amendments to the Federal Rules." (quotation omitted)). And the County surely raised no objection to Howard's request by *joining* his motion to unseal.

*Second*, and relatedly, the Court could order the County to produce responsive documents to an imperfect discovery demand rather than forcing Howard back to the drawing board. The Court has broad discretion to oversee

Court to find that it lacks authority to unseal Howard's 160.50 records—at least until Howard attempted to obtain them in state court. (*Id.* ("This case law confirms that the Court does not have authority to unseal those files at this time." (discussing *Murphy v. City of Elmira*, No. 18-CV-6572-FPG, 2023 WL 7524425, at *2 (W.D.N.Y. Nov. 14, 2023)).) The County thus asked the Court to deny the motion it had just joined.[10] (*Id.* ("Plaintiff's motion should be denied, and the matter should be sent back to the parties to work together to find a way to unseal the documents in question properly.").)

Howard likewise pivoted—though without contradicting himself—asserting that the MCDA is a party to this action because the County is also a party. (Letter at 1, ECF No. 33, Oct. 11, 2024 ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." (quoting *Paulk v. Kearns*, 596 F. Supp. 3d 491, 503 (W.D.N.Y. 2022)).) Howard argues that if the MCDA is just a subdivision of the County, the MCDA may be a party susceptible to document requests.

---

and informally resolve discovery disputes and could consider the County's objection in telling the County what to produce.

    [10] The County's deputy attorney later explained this about-face: "I mistakenly offered to move forward with a stipulation only, where I now know that current District Attorney's Office policy and practice is that files sealed pursuant to C.P.L. § 160.50 should be unsealed by Court order." (Clark Decl. ¶ 16, ECF No. 34.) Unfortunately for the County and MCDA, they are bound by their attorneys' earlier decision to join Howard's motion to unseal.

Howard also pointed to how this Court can confirm that the MCDA is a party. (*See id.* at 1–2 ("[T]he Court acknowledges that district courts do possess the authority to unseal state criminal records in the possession of a state district attorney, when the records are relevant to the federal lawsuit and the district attorney moves to quash a subpoena, or objects to a discovery demand." (internal quotation marks omitted) (quoting *Murphy*, 2023 WL 7524425, at *2)).) So, Howard proposed—as an alternative—that this Court so-order a subpoena to obtain Howard's 160.50 records. (*Id.* at 2.)

## E.    The Court orders oral argument to clarify the parties' positions.

With a stack of briefing in hand and several difficult issues to confront, the Court ordered oral argument. (Text Order, ECF No. 35, Oct. 15, 2024.) The Court directed the parties to "state during oral argument whether they need additional briefing or formal motion practice regarding" the motion to unseal and the sanctions motion. (*Id.*) "[O]therwise," the Court noted, it would "take the motions under advisement after oral argument and issue a written decision." (*Id.*)

A day before the oral argument, the County (by email) asked the Court to adjourn the argument so that the County could bring its own motion to compel. (Letter,[11] ECF No. 44-2 ("I am writing to respectfully

---

[11] Attached as Exhibit B to this decision and order.

request leave to file a motion to compel the Plaintiff to execute a new authorization that authorizes the unsealing of only the documents that the Plaintiff wants to have unsealed together with an order requiring Plaintiff or Plaintiff's Attorneys to pay the reasonable expenses of that motion, including attorney's fees, pursuant to FRCP 37(a)(5)(A).").) The County indicated that it had "asked that Plaintiff withdraw ECF [No.] 28." (*Id*.) Because of the lateness of that request, the Court denied the County's request insofar as it asked the Court to adjourn oral argument. (Text Order, ECF No. 36, Oct. 22, 2024.)

## F.    Howard has also moved for leave to file a sanctions motion.

As noted, something else happened on the Court's deadline for the parties' motion to unseal. Howard wrote the Court to explain (1) "why the motion for unsealing of records has not been submitted as a joint motion" and (2) to discuss the County's handling of Howard's 160.50 records. (Letter at 1, ECF No. 29, September 30, 2024.)

Admittedly, Howard's letter read like a memorandum of law. Although its language bordered on histrionics, the letter only requested a conference pursuant to this Court's individual rules. (Letter at 7, ECF No. 29 ("The gravity of this situation cannot be overstated. The County's actions represent not just a violation of Mr. Howard's rights, but a challenge to the integrity of our legal system. We request an immediate conference with Your Honor to address these egregious violations and to

determine the full extent of the County's unauthorized access to sealed records.").) The County understandably mistook ECF No. 29 for a motion, filing opposition that included procedural arguments under this District's Local Rules. (*See generally* Resp. in Oppn., ECF No. 34.)

Because the parties agreed during oral argument that only leave to file a sanctions motion is before the Court, the Court does not rule on the sanctions motion. The Court below addresses the motion and when Howard may bring it.

## APPLICABLE LAW

"Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 (1987). "'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Id.* (quoting *Hilton v. Guyot,* 159 U.S. 113, 163–164 (1895)). Like comity between countries, comity between the federal government and states does not involve rote application of state law. Even where "New York State ha[s] created a rule of confidentiality … this would not be binding on a

federal court in a federal question case." *Adams v. Buffalo Pub. Sch.*, No. 13CV435A, 2014 WL 3882182, at *6 (W.D.N.Y. Aug. 7, 2014). Second Circuit trial courts have held as much about various New York State laws. *Id.* (collecting cases).

While the Court has already discussed the statutory scheme of Sections 160.50 and 160.60 in introducing the parties' dispute, a brief refresher may be helpful. Under Section 160.50, "[u]pon the termination of a criminal action or proceeding against a person in favor of such person … the record of such action or proceeding shall be sealed." C.P.L. § 160.50. The plain language of Section 160.50 indicates that it is self-effectuating. *See People v. Anonymous*, 34 N.Y.3d at 636 ("As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." (quotation omitted) (discussing Section 160.50)). No order should be required to seal documents pursuant to Section 160.50. *See* C.P.L. § 160.50 Practice Commentary ("Procedurally, since the 1991 legislation, the clerk of the court, rather than the court by court order, seals the court records and notifies the appropriate agencies to take the action required of them under the statute.").

Likewise, as discussed, the plain language of Section 160.50(1)(d) anticipates easy access for Howard. Section 160.50(1)(d) provides that "such records shall be made available to the person accused or such

person's designated agent[.]" As Section 160.50 is meant to benefit Howard, it follows that he can determine whether he wants to release his official 160.50 records.

Case law accords. "The primary purpose of the sealing of records pursuant to [Section] 160.50 is to ensure confidentiality and to protect the individual from the potential public stigma associated with a criminal prosecution." *Lehman v. Kornblau*, 206 F.R.D. 345, 347 (E.D.N.Y. 2001) (citing *Harper*, 89 N.Y.2d at 766)[12]; *see also MacNamara v. City of New York*, No. 04CIV.9612(KMK)(JCF), 2006 WL 3298911, at *1 (S.D.N.Y. Nov. 13, 2006) (quoting *Hynes v. Karassik*, 47 N.Y.2d 659, 662 (1979)). As discussed, that benefit flows to Howard.

Even so, the statute carves out several "narrowly defined exceptions" situations where *others* may access a citizen's 160.50 records. *Harper*, 89 N.Y.2d at 766 (quotation omitted); *People v. Anonymous*, 34 N.Y.3d at 638 ("In [Section] 160.50(1)(d), the legislature identified a restricted list of six exceptions to the sealing mandate's prohibition on access[.]" (alterations added)). Notably, where "a law enforcement agency" seeks a citizen's 160.50 records, that agency must move *ex parte*. *Id*. at 638 n.1. (quoting Section 160.50(1)(d)). For all other exceptions, including the exception for the accused, the party seeking 160.50 records is not required to bring a motion. More on that later.

---

[12] Full citation available *supra* n.8.

Returning to the exception applicable to Howard,[13] Section 160.50(1)(d) states no requirement for a motion before a court. But the New York State Court of Appeals has held that Howard may only access his official records. *See Harper*, 89 N.Y.2d at 767 (noting that "a former defendant does not have an absolute right to the disclosure of materials sealed pursuant to [Section] 160.50").

But when a plaintiff sues in federal court to vindicate federal civil rights, "New York state law does not govern discoverability and confidentiality in federal civil rights actions." *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988); *see also Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 531 (E.D.N.Y.), *magistrate judge's order aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. County of Nassau*, 730 F.3d 156 (2d Cir. 2013); *Chaudhuri v. Green*, No. 07-CV-6261-CJS, 2009 WL 1468461, at *1 (W.D.N.Y. May 22, 2009) (same). Indeed, federal courts hold that "state privacy rules" like Section 160.50 "should never be permitted to 'frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important

---

[13] There is yet another exception of sorts that would apply. Howard has surely lost some of the protection of Section 160.50: "New York cases are clear that a party otherwise protected by a [Section] 160.50 sealing of records can waive that protection by commencing a civil action and placing protected information into issue." *Murphy*, 2023 WL 7524425, at *1 (quoting *Green v. Montgomery*, 219 F.3d 52, 57 (2d Cir. 2000)).

federal substantive policy such as that embodied in [S]ection 1983.'"
*Lehman*, 206 F.R.D. at 348 (quoting *King*, 121 F.R.D. at 187). With this
in mind, the Court turns to Howard's motion.

## DISCUSSION

This Court holds that Howard's 160.50 records concerning the ar-
rest underlying this case are unsealed and must be produced to How-
ard's attorneys. Howard made a valid discovery demand that includes
the MCDA. Even if Howard's demand were too broad or otherwise objec-
tionable, as discussed above,[14] the County has lost its chance to object to
the form of Howard's request. And as the Court explains below, a dis-
covery request is a sufficient jurisdictional hook to give this Court power
to unseal and order the production of Howard's 160.50 records.

Independently, the Court finds that the County has possession,
custody, or control of Howard's 160.50 records. This, too, allows the
Court to unseal and order the production of Howard's 160.50 records.

Finally, as explained next, the Court's decision does not disre-
spect comity. Rather, it fits snugly within the balance other courts have
struck.

---

[14] *See supra* n.9.

24

## I.    Releasing Howard's 160.50 records does not run afoul of comity.

Directing the County to produce Howard's 160.50 records by un-sealing and compelling their production does not run afoul of comity. Indeed, the New York State Legislature passed Sections 160.50 and 160.60 to benefit accused individuals like Howard, not to invite munici-palities to throw up roadblocks to obtaining such documents. Ulti-mately, this Court finds little—if any—support for the County's argu-ment that Howard must go to state court first for his 160.50 records.

Under the principle of comity, "state rules may illustrate im-portant privacy interests, and a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privi-leges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Coleman v. County of Suffolk*, 174 F. Supp. 3d 747, 757 (E.D.N.Y. 2016) (cleaned up) (quoting *King*, 121 F.R.D. at 187), *aff'd*, 685 F. App'x 69 (2d Cir. 2017). But this Court must not mechanically apply a state rule where doing so "would be undesira-ble and improper and would [ ] frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating im-portant federal substantive policy such as that embodied in [S]ection 1983." *Id.* (alterations added and cleaned up) (quoting *King*, 121 F.R.D. at 187). Indeed, as the *Coleman* court concluded, "unless the applicant, through competent declarations, shows the court *what interests* of law

25

enforcement or privacy would be harmed, *how* disclosure ... would cause the harm, and *how much* harm there would be, the court cannot conduct a meaningful balancing analysis." *Id*. at 758 (cleaned up and emphasis in original). While that conclusion came in the context of former New York Civil Rights Law Section 50-a, it still carries persuasive weight here.

That is because the County has not shown any meaningful interest (other than perhaps judicial economy) regarding Howard's 160.50 records. Although the County acknowledges this Court's authority to unseal 160.50 records, at oral argument, the County clarified that its position is that plaintiffs like Howard should go first to state court. Yet applying comity as the County urges would disrespect not just federal interests but also the purpose and text of Section 160.50.

## A.    Federal interests.

With this conclusion in mind, the Court turns to federal interests. To begin, recall that federal law governs this discovery motion:

> [I]t should be emphasized that New York State law does not govern discoverability and confidentiality in federal civil rights actions, and ... state privacy rules ... should never be permitted to "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983."

*Lehman*, 206 F.R.D. at 348 (quotation omitted); *accord King*, 121 F.R.D. at 187 (same). Of course, this Court has "no general power to compel action by state officials." *Murphy*, 2023 WL 7524425, at *2 ("The federal

courts have no general power to compel action by state officials." (quoting *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988))). To respect comity vis-à-vis the state, federal courts require a jurisdictional hook. One leading case lays out the menu of options for such a hook and has been relied on extensively by this District in later decisions dealing with the release of records under Section 160.50:

> A number of cases have considered the appropriate procedure to be followed to effect an unsealing of criminal records pursuant to [Section] 160.50 in the context of discovery in a federal civil suit, and the consensus seems to be that a plaintiff can either apply to the state court to unseal the records, or can subpoena the District Attorney, or seek discovery if the District Attorney is a party to the proceeding.

*Lehman*, 206 F.R.D. at 347 (alteration added and collecting cases); *accord Murphy*, 2023 WL 7524425, at *2 ("However, the Court acknowledges that district courts do possess the authority to unseal state criminal records in the possession of a state district attorney, when the records are relevant to the federal lawsuit and *the district attorney moves to quash a subpoena, or objects to a discovery demand.*" (collecting cases, emphasis in original, and internal quotation marks omitted)). As the Court finds below, "because the documents have been sought in a discovery demand to the party District Attorney, and they are apparently in that party's possession, the plaintiff need not apply to state court to have the documents unsealed." *Lehman*, 206 F.R.D. at 348; *Schomburg*, 298 F.R.D. at 141 (rejecting district attorney's argument that only a

state court "can issue an 'unsealing order'" giving the plaintiff access to 160.50 records of another). More on this later.

1.    *The federal interests here are strong.*

Howard has a strong interest in obtaining his 160.50 records. Enter 42 U.S.C. § 1983 and the right of citizens to vindicate their federal civil rights. A plaintiff like Howard wrongly accused of a crime may sue under Section 1983, a Reconstruction-era statute designed to help him do just that.[15] Section 1983's "central purpose" is "to provide compensatory relief to those deprived of their federal rights by state actors." *Felder v. Casey*, 487 U.S. 131, 141 (1988). Accordingly, municipalities and their subdivisions may be held liable under 42 U.S.C. § 1983 where an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. And this "notwithstanding any provision of state law to the contrary." *Patsy v. Bd. of Regents*, 457 U.S. 496, 504 (1982). So, there is surely a strong federal interest in giving Howard the chance to bring his civil rights claims under Section 1983. *See Monroe v. Pape*, 365 U.S. 167, 180 (1961) (explaining that Congress enacted Section 1983 to "afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or

---

[15] The Ku Klux Klan Act of 1871, also called the Civil Rights Act of 1871, or the Force Act of 1871, 17 Stat. 13, was partially codified as Section 1983. *See Monell*, 436 U.S. at 719 (Rehnquist, J., dissenting).

otherwise" local governments sometimes fail to honor the rights afforded citizens by the federal constitution), *overruled by Monell*, 436 U.S. 658.

Here, Howard seeks to vindicate his civil rights through Section 1983 and *Monell*. Under Howard's theory,[16] the County is liable because the District Attorney turned a blind eye to *Brady* violations in her office, evincing "deliberate indifference." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (noting "that acquiescence may be properly thought of as a city 'policy or custom' that is actionable under § 1983"). Howard alleges the MCDA did this by failing to adequately train attorneys. Howard needs records about the arrest underlying his complaint to show there was an underlying constitutional violation—as Section 1983 and *Monell* require. Indeed, Howard may yet have difficulty proving his *Monell* claim because his records provide just one data point: He may need to show that "there is a history of employees mishandling" *Brady* compliance, such that they "frequently cause the deprivation of [ ] citizen[s'] constitutional rights." *Jenkins*, 478 F.3d at 94 (alterations added). But as the Court stated early on, that is a question for another day.

The Court has begun to answer the lone question that needs answering: May Howard obtain his 160.50 records without going to state

---

[16] Given the pending motion for judgment on the pleadings, the Court notes that it takes no stance on the ultimate merit of this theory.

court? The answer thus far? Yes. To hold otherwise would disrespect federal interests under the Court's comity analysis.

### 2. The County's argument about federal interests is unavailing.

Despite the strong federal interest here, the County urges the Court to force Howard to "proceed by applying to the state court" to unseal his 160.50 records. *Townes v. City of New York*, No. CV-94-2595 (CPS), 1996 WL 164961, at *10 (E.D.N.Y. Mar. 28, 1996); *see also Thomas*, 2016 WL 5334439, at *2 (noting that, where the plaintiff's records were sealed pursuant to Section 160.50, "requests for access to sealed records should be made, in the first instance, to the court that issued the sealing order or by subpoena or request to the clerk of the court or the prosecuting attorney" (citing *Townes*, 1996 WL 164961, at *10)). In essence, the County argues that when a state court issues a sealing order, it should—as a matter of comity—be a state court that unseals the records of the accused. Not so.

*First*, as discussed, "when the district attorney objects to a discovery demand, it is within the district court's power to issue an order compelling production" of sealed 160.50 records. *Bertuglia v. City of New York*, No. 11 CIV. 2141 JGK, 2014 WL 626848, at *1 (S.D.N.Y. Feb. 18, 2014) (collecting cases). *Second*, that is the position of most trial courts in this Circuit. Indeed, from this Court's review of the case law, *Townes* and later cases relying on it are outliers.

*Third*, the cases the County cites are distinguishable. The County relies heavily on *Murphy v. City of Elmira* despite Judge Geraci recognizing that "district courts do possess the authority to unseal state criminal records in the possession of a state district attorney[] when the records are relevant to the federal lawsuit and the district attorney moves to quash a subpoena, or objects to a discovery demand." 2023 WL 7524425, at *2 (quoting *K.A. v. City of N.Y.*, No. 116CV04936LTSKNF, 2022 WL 1063125, at *2 (S.D.N.Y. Apr. 8, 2022)). And so, *Murphy* acknowledged the "menu of options" to which the Court alluded earlier. Ultimately, Judge Geraci concluded that the defendants in *Murphy* did not satisfy *any* of the "menu of options." *See id.* (noting that the defendants had not applied to state court, that the district attorney was not a party, and that the defendants had not requested a subpoena). Unlike *Murphy*, this Court finds that Howard's discovery request is a sufficient hook to unseal Howard's 160.50 records. The County and MCDA have objected by refusing to hand over Howard's records, despite the Court's urging and Howard's authorization.

## B.     State interests.

Forcing Howard to state court to obtain his 160.50 records would disrespect the New York State Legislature's pronouncement in Sections 160.50 and 160.60. The purpose and text of Section 160.50 support this conclusion.

The Court opened this decision by pointing out that plaintiffs like Howard are "the subject of the records" and thus "the beneficiary of the sealing provision" of Section 160.50. *Chaudhuri*, 2009 WL 1468461, at *1 (alteration added) (declining to order the filing of plaintiff's 160.50 records under seal). The Court will not repeat here all it wrote earlier. It suffices to note only that Section 160.50 "clearly intends that the criminal action and proceedings be treated as if they never occurred—as if they are not part of [the] defendant's past." *People v. Anonymous*, 34 N.Y.3d at 637 (discussing the operation of Section 160.50 and Section 160.60). This is the purpose of Section 160.50. The New York State Legislature enacted Section 160.50 to ensure that an accused person like Howard would "suffer [no] adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law." *Lino v. City of New York*, 101 A.D.3d 552, 556 (1st Dep't 2012) (alteration added) (quoting *Joseph M. v. New York City Dep't of Educ.*, 82 N.Y.2d 128, 131–32 (1993)).[17] Thus, Section 160.50 prevents "public scrutiny" of sealed criminal records, precluding "access by those, especially in government and bureaucracy, who might otherwise prejudicially use rightfully protected information." *Alonzo M. v. New York City*

---

[17] This language originates from the Governor's Approval Memorandum for Section 160.50, 1976 McKinney's Session Law of N.Y. at 2451; 1976 N.Y. Legis. Ann. at 408–09.

*Dep't of Prob.*, 72 N.Y.2d 662, 668 (1988). The text of Section 160.50 does not suggest otherwise.

Instead, Section 160.50 delineates when a party must go to state court and seek an order on motion. As discussed, Section 160.50 has no such requirement when an accused like Howard requests *his* records. Worse for the County, the Court of Appeals has told courts that they must construe Section 160.50 narrowly:

> [A]bsent extraordinary circumstances … a specific grant of power … or the existence of a legal mandate the nature of which would be impossible to fulfill without unsealing criminal records … sealed criminal records may only be accessed by individuals and agencies specifically enumerated, and "narrowly defined" in [Section] 160.50(1)(d).

*New York State Comm'n on Jud. Conduct v. Rubenstein*, 23 N.Y.3d 570, 581 (2014) (alterations added, internal citations, and quotations, omitted).

This requirement for narrow construction dovetails with a related canon of construction. If the text of Section 160.50 is to be narrowly construed, it unambiguously states when a party must move in state court to unseal the accused's 160.50 records. And so, because the Legislature did not require such a motion for when Howard seeks his own 160.50 records, "an irrefutable inference must be drawn that what [was] omitted or not included was intended to be omitted or excluded." *Alonzo M.*, 72 N.Y.2d at 665 (1988) (discussing sealing statute "patterned after"

Section 160.50) (quoting *Patrolmen's Benev. Ass'n of City of New York v. City of New York*, 41 N.Y.2d 205, 208–09 (1976)).

This Court would accordingly overstep its bounds by reading such a requirement into Section 160.50(1)(d) where the Legislature mandated nothing of the sort. *See People v. Boothe*, 16 N.Y.3d 195, 198 (2011) ("It is well settled 'that courts are not to legislate under the guise of interpretation.'" (quoting *People v. Finnegan*, 85 N.Y.2d 53, 58 (1995))).

In addressing the text of Section 160.50, the Court likewise rejects the County's argument about unsealing the wrong records. Ultimately, when the Legislature speaks, the County (and this Court, under the relevant comity analysis) must follow the law without heel-dragging. Policy arguments sounding in fear of inadvertent non-compliance do not stand up against the plain text of the law. This Court has found Justice Cardozo's famous statement helpful elsewhere: "We" judges "do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it." *Kimble v. Opteon Appraisal, Inc.*, 712 F. Supp. 3d 379, 389 (W.D.N.Y. 2024) (quoting *Anderson v. Wilson*, 289 U.S. 20, 27 (1933)). This Court must adhere to the law as written.

In any event, the County's fears seem overblown. "[T]he rights of arrestees provided by [Section] 160.50 are 'purely statutory in nature and [do] not implicate constitutional concerns.'" *D.S.*, 2014 WL 774671,

at *4 (alterations added) (quoting *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 n.6 (S.D.N.Y. 2013)); *accord Reeb v. Woods*, 751 F. Supp. 2d 484, 490 (W.D.N.Y. 2010). Thus, "a violation of [Section 160.50] does not create a cognizable cause of action under [Section 1983]." *Palacio v. Goord*, 338 F. App'x 37, 38 (2d Cir. 2009) (alterations added).

## II.    The Court has jurisdiction to unseal Howard's 160.50 records without a state court order.

With comity in Howard's corner, the Court turns to whether there is an adequate basis to order the unsealing and production of Howard's requested 160.50 records. *First*, the Court holds that the County must hand them over because Howard's 160.50 records are within the County's custody, possession, or control. *Second*, because the MCDA is a party to this lawsuit for purposes of Howard's request for his 160.50 records, the Court likewise holds that the County must hand over Howard's 160.50 records. Thus, the Court satisfies the requirement for a jurisdictional hook. As stated, "district courts [ ] possess the authority to unseal state criminal records in the possession of a state district attorney, when the records are relevant to the federal lawsuit and 'the district attorney moves to quash a subpoena, or objects to a discovery demand.'" *K.A.*, 2022 WL 1063125, at *2 (quoting *Lehman*, 206 F.R.D. at 347); *see also Bertuglia*, 2014 WL 626848, at *1 (same).

### A.    The County has custody, possession, or control of Howard's records.

Under Fed. R. Civ. P. 34(a)(1), Howard is entitled to request records in the County's "possession, custody, or control." Custody and control are broader than mere possession. Indeed, courts broadly construe control. *See, e.g., Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989) noting that "control is to be broadly construed"). As the Second Circuit has stated: "Control does not require actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents." *Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023) (cleaned up and quotations omitted); *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("We also think it fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents. However, if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required." (citation omitted)). "Whether a party has a sufficient degree of control over requested documents to constitute a practical ability to obtain [them] is a question of fact." *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014) (alteration added) (citing *Sigety v. Abrams*, 632 F.2d 969, 974 (2d Cir. 1980));

*see also Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 204 (1958).

The Court resolves this question of fact in Howard's favor. The County has the practical ability to obtain Howard's 160.50 records and thus controls them. To begin, the County wrote the Court earlier in October, stating that it "join[ed] in Plaintiff's motion to unseal the file in '*People v. Darius Howard*, Ind. No. 2016-154[.]" (Letter at 1, ECF No. 30 (alterations added).) That the County joined Howard's motion suggests that the County has control of—by its practical ability to obtain—Howard's 160.50 records. This is because the County noted that it would obtain and distribute Howard's 160.50 records in the parties' initial proposed stipulation and order. In that initial stipulation and order, which the County Attorney signed as attorney for the County Defendants, the County indicated that Howard's 160.50 records "will be provided to the Monroe County Law Department" to hand over to Howard. (Proposed Stipulation and Order ¶¶ 3–4, ECF No. 24.)

Next, the Court rejects the artificial barrier the County is trying to erect. The County asserts that "even if … the files are physically in the offices of the County Attorney [ ] because any such records are held by the County Attorney only as attorney for the District Attorney, [ ] they remain sealed until they are unsealed by an order from a court of

competent jurisdiction." (Letter at 2, ECF No. 32 (alterations added).) The Court disagrees.

The County Attorney—who is obviously the County's representative for this case—obtained all of Howard's 160.50 records to prepare "for disclosure of the demanded items," and so he "obtained all of [Howard's] files from [his] clients in the Monroe County District Attorney's Office." (Clark Decl. ¶ 8, ECF No. 34 (alterations added).) The County Attorney did this knowing that Howard had requested these documents in discovery, anticipating that these records could eventually be released to Howard for his case against the County. This demonstrates control, i.e., practical ability to obtain, because the County Attorney determined the location of these documents. *See Gross*, 304 F.R.D. at 143 (noting that the party received "at least some of th[e] requested documents" from a nonparty and finding that this "demonstrate[d] a degree of 'close coordination'" (alterations added) (quoting *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999))). The County Attorney cannot brush away the reality that he represents the *County* in this case and (perhaps) the MCDA.

Indeed, the County Attorney alluded to this being common practice:

> To the best of my knowledge, information and belief, based on numerous communications with my clients in the Monroe County District Attorney's Office, who are knowledgeable and experienced with the requirements of CPL 160.50,

> it is allowable for the attorneys for the District Attorney's Office to have access to sealed files, in preparation for disclosure, as long as the seal is respected and maintained, and no sealed files are accessed, opened, read, reviewed, copied, or disclosed in any way until they have been lawfully unsealed.

(Clark Decl. ¶ 9, ECF No. 34 (emphasis removed).) This bolsters the Court's finding of coordinated effort.

And this demonstrates common interest. *See Gross*, 304 F.R.D. at 143 (finding shared interest where employee of DOCCS was "carry[ing] out [ ] public objectives on behalf of DOCCS" (alterations added)). Like the *Gross* case, in which the Court found shared interest when an agent was carrying out public objectives of its employer, the County Attorney here is carrying out the MCDA's policy about Section 160.50. Indeed, upon learning of the MCDA's policy, the County's attorney explained why the County tried to un-join Howard's motion to unseal: "I mistakenly offered to move forward with a stipulation only, where I now know that current District Attorney's Office policy and practice is that files sealed pursuant to CPL § 160.50 should be unsealed by Court order." (Clark Decl. ¶ 16, ECF No. 34.)

The Court concludes that Monroe County, through the County Attorney, has custody, possession, or control of Howard's 160.50 records. The Court finds control because of the County's demonstrated practical ability to obtain those records.

> **B.    Separately,  the  Court  can  compel  the MCDA to produce Howard's 160.50 records because  the  MCDA  is  a  subdivision  of  the County  for  purposes  of  this  case.**

The Court independently determines that it has the authority to order the MCDA to hand over Howard's 160.50 records. For this case and Howard's discovery request seeking his 160.50 records, the MCDA is a subdivision of the County.

To demonstrate as much, consider when the District Attorney or ADA acts as a state—not County—official. "State law determines whether a particular official has the requisite policymaking authority that can render a governmental unit liable for unconstitutional actions taken in pursuance of that policy[.]" *Baez v. Hennessy*, 853 F.2d 73, 76 (2d Cir. 1988) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124–25 (1988)).

When the MCDA prosecutes a matter, black-letter New York law holds that the MCDA and its ADAs "represent[] the State" and "not the [C]ounty." *Id*. at 77 (alterations added) (citing *McGinley v. Hynes*, 51 N.Y.2d 116, 123 (1980)); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 535–36 (2d Cir. 1993) (same).

But where, as here, a plaintiff attempts a failure to train claim, the Second Circuit and New York courts have repeatedly concluded that "where prosecutors, pursuant to policy or custom, conceal exculpatory evidence and commit other wrongs in order to secure a conviction,

liability rests with the county." *Bellamy v. City of New York*, 914 F.3d 727, 761 (2d Cir. 2019) (collecting cases). Why does liability rest with the County? Because in failing to train ADAs, "a district attorney acts as the manager of the district attorney's office," and thus "as a county policymaker." *Miller v. County of Monroe*, No. 23-CV-06649-FPG, 2024 WL 2804435, at *4 (W.D.N.Y. May 31, 2024) (quoting *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992)); *see also Ying Jin Gan*, 996 F.2d at 536 ("Where, as to such administrative matters, the district attorney acts as 'manager' of the District Attorney's office of one of New York City's constituent counties, he may be considered a municipal policymaker for the City of New York." (citation omitted)).

Of course, the question of *immunity* remains. *Bellamy*, 914 F.3d at 760 ("But, the legal question of when immunity should attach is an entirely separate inquiry from which state entity is a final policymaker for *Monell*."). "In contrast to the immunity inquiry, *Monell* addresses not *whether* certain functions can open *individuals* to liability, but simply *which governmental entity* (the state or the municipality) is responsible for a given function." *Id.* (emphasis in original). But because state law plainly indicates that managerial functions, like training, are left to the MCDA as a subdivision of the County, this Court must conclude that the MCDA is subsumed within the County for this lawsuit and is therefore susceptible to discovery requests.

Thus, when the County declined to produce Howard's 160.50 records in response to Howard's discovery request, it responded for itself and the MCDA. In so doing, the County's response provided this Court with the jurisdictional hook needed to do what it does now: Order the County to hand over the 160.50 records Howard seeks.

As requested, the Court converts Howard's motion to unseal into a motion to compel and unseal. The Court **GRANTS** that motion and its requested relief for "the complete contents of the file related to Plaintiff Darius Howard's underlying criminal prosecution, *People v. Darius Howard*, Ind. No. 2016-154." (Notice of Mot., ECF No. 28, Sept. 30, 2024.) The Court notes that it has examined the sealing orders issued in the underlying criminal prosecution and has found nothing that would give the Court pause in ordering this unsealing. (Text Orders, ECF Nos. 39 & 40, Oct. 24, 2024.) In any event, the unsealed records fall under the Court's earlier protective order. (ECF No. 15, Mar. 13, 2024.)

### III. The Court rejects the County's request for leave to file a motion to compel.

Because the Court sees no problem with comity and concludes that it has the power to order the production of Howard's 160.50 records, the Court **DENIES** the County's request for leave to file a motion to compel Howard to sign an authorization for those records. The Court likewise rejects the County's request as moot.

Separately, the Court finds that the County lost its chance at bringing such a motion to compel because the County *joined* Howard's motion. The Court will not allow the County to do an about-face that would delay a decision on Howard's motion to unseal. The Court is within its discretion to deny the County's request for leave to bring a motion to compel because the County has (for now) forfeited this argument. *See Brown v. City of New York*, 862 F.3d 182, 187 (2d Cir. 2017) ("The discretion trial courts may exercise on matters of procedure extends to a decision on whether an argument has been waived." (citation omitted)). As the Court explains below, the County may later bring a motion to compel, if appropriate.

Here, the County had adequate opportunity to respond to Howard's argument about this Court's authority to unseal his 160.50 records concerning the arrest underlying this case. *See Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001) (noting that if a party raises a *new argument*, the district court can "provide parties with an adequate opportunity to respond … by ordering additional briefing or an extra round of oral argument"). The County represented that it had reviewed Howard's motion and that—notwithstanding Howard's letter request for a conference and sanctions—it joined Howard's motion. So, Howard's motion was unopposed. Because the Court determines that it may hear Howard's motion to unseal, the Court likewise finds that the County has

forfeited any chance to oppose it on substantive (though certainly not jurisdictional) grounds. *See Bertuglia*, 2014 WL 626848, at *2 ("Given that the plaintiffs' application for an unsealing order is unopposed, it should be granted.").

## IV.   The Court declines to award attorneys' fees.

The Federal Rules of Civil Procedure make losing a motion to compel costly. Under Fed. R. Civ. P. 37(a)(5)(A), the Court "must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." This rule has three exceptions. *See Hassoun v. Searls*, 524 F. Supp. 3d 101, 109 (W.D.N.Y. 2021) ("It is widely accepted that an award of expenses under Rule 37(a)(5)(A) is mandatory unless one of the three exceptions applies." (cleaned up) (quoting *Wager v. G4S Secure Integration, LLC*, No. 1:19-CV-03547 MKV KNF, 2021 WL 293076, at *4 (S.D.N.Y. Jan. 28, 2021))). Under these exceptions, the Court must not award fees where

- "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action";

- "(ii) the opposing party's nondisclosure, response, or objection was substantially justified"; or

- "(iii) other circumstances make an award of expenses un-
  just."

*Id*. (reformatted as a list) (quoting Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii)).
"The burden is 'on the disobedient party to avoid expenses by showing
that his failure is justified or that special circumstances make an award
of expenses unjust.'" *White v. Larusch*, 532 F. Supp. 3d 122, 124
(W.D.N.Y. 2021 (quoting *Novak v. Wolpoff & Abramson LLP*, 536 F.3d
175, 178 (2d Cir. 2008)).

Here, at Howard's request, the Court converted Howard's motion
to unseal into a motion to compel. The Court then granted that motion.

In the interest of not dragging out satellite litigation, the Court
now rules that the County's position was substantially justified. The
Court finds that this was "justification to a degree that could satisfy a
reasonable person that parties could differ as to whether the party was
required to comply with the disclosure request, or if there exists a gen-
uine dispute concerning compliance." *Jackson v. Nassau County*, 602 F.
Supp. 3d 352, 355 (E.D.N.Y. 2022) (quoting *Ritchie Risk-Linked Strate-
gies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159
(S.D.N.Y. 2012)); *Hinterberger v. Cath. Health Sys., Inc.*, 284 F.R.D. 94,
106 (W.D.N.Y. 2012) ("The Supreme Court has defined 'substantially
justified' to mean 'justified in the substance or the main'—that is,

justified to a degree that could satisfy a reasonable person." (quoting *United States v. $19,047.00 in U.S. Currency*, 95 F.3d 248, 251 (2d Cir. 1996))).

"This standard requires only an inquiry as to 'an objective test of reasonableness' and not as to whether the party or counsel acted 'in good faith.'" *Jackson*, 602 F. Supp. 3d at 355 (quoting *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-CV-10256-GHW, 2021 WL 2650371, at *2 (S.D.N.Y. June 28, 2021)). "The burden of persuasion as to whether an exception to mandatory expenses applies is on the party opposing the motion." *Id.*; *see also Novak* 536 F.3d at 178 (discussing Fed. R. Civ. P. 37).

While the Court ultimately disagreed with the County's position about civil rights plaintiffs going first to state court for 160.50 records, the Court finds the County's position was substantially justified. The County was able to point to case law[18] and practices within this District that provided the County with authority for its position that a plaintiff seeking his or her 160.50 records should go first to state court to obtain such records. (Letter, ECF No. 32; Clark Decl. ¶ 15 & Ex. 2, ECF No. 34.) The Court further finds that the County did not forfeit these arguments because they were jurisdictional. *See Murphy* 2023 WL 7524425, *2 (finding that the court was "without authority to order the state-court

---

[18] *See, e.g., supra* n.7.

documents unsealed"). The County also made sensible policy arguments, although the Court found that they were outweighed by Howard's interest in his 160.50 records and the purpose and structure of Section 160.50.

## IV.    The sanctions motion.

Howard asks the Court for leave to bring a sanctions motion against the County for improperly accessing Howard's 160.50 records. (ECF No. 29.) While Howard has no reason to believe that the County or MCDA officials looked at his 160.50 records,[19] he argues that the County improperly possessed or accessed them. Howard contends that the County improperly accessed his 160.50 records by transporting them from point A to point B: From the MCDA to the County Attorney's office in preparation for handing them over. (Clark Decl. ¶ 8, ECF No. 34 ("In preparation for disclosure of the demanded items, I obtained all of the Plaintiff's files from my clients in the Monroe County District Attorney's Office.").)

To Howard, this means that sealed information has been "made available," to a third party, violating Section 160.50(5)(b)(i). He states: "The County's possession of [my] sealed records, both related and

---

[19] When asked during oral argument whether they had looked at any of Howard's 160.50 records, both the County's deputy attorney and MCDA liaison stated they had not. The County's deputy attorney indicated the same in a sworn declaration. (Clark Decl. ¶ 4, ECF No. 34 ("Said files have not been accessed, opened, read, reviewed, copied or otherwise unsealed in any way.").)

unrelated to the instant case, without proper authorization or a court order, constitutes [a] [ ] violation of [Section] 160.50." (Reply at 6, ECF No. 37, Oct. 22, 2024 (alterations added).) The County submits several arguments in response, including that Howard consented to having the County access his 160.50 records to hand them over.

For now, the Court sees no reason for formal motion practice on any potential sanctions motion until after the Hon. Frank P. Geraci, Jr., decides the County's pending dispositive motion. The Court thus denies the other relief for which Howard applied. *First*, Howard's relief would involve precluding the County from asking certain questions at his deposition or introducing facts at trial about his earlier arrests. (Reply at 5–6, ECF No. 37.) But preclusion may not be needed if the District Court dismisses the County. In discussing prejudice, Howard alludes primarily to credibility and preclusion. (Letter at 6, ECF No. 29 ("The County's actions have potentially exposed [ ] Howard to precisely the kind of prejudice the statute aims to prevent. And courts uniformly agree that preclusion from trial of evidence or testimony relating to sealed arrest and prosecution records obtained in violation of Section 160.50 is appropriate." (collecting cases)).) Howard's concerns center on state law and state cases rather than cases about preclusion under the Federal Rules of Civil Procedure. While this does not doom Howard's argument, it makes the Court skeptical. What is good for the goose is good for the gander: If

48

comity favors Howard concerning his motion to unseal, comity may favor the County having access to Howard's 160.50 records to defend this case. At the risk of nauseating repetition: "In cases presenting federal questions, such as here, discoverability, privileges, and confidentiality are governed by federal law, not state law." *Schomburg*, 298 F.R.D. at 141 (quoting *Crosby v. City of New York*, 269 F.R.D. 267, 274 (S.D.N.Y. 2010)).

*Second*, the Court finds that judicial economy is best served by hearing any forthcoming motion for sanctions on the same briefing schedule as any motion to compel that the County may bring. The Court's discussion thus far already suggests that there may be common issues for the Court to resolve between both motions (assuming both are brought). As the County correctly points out, Howard may have waived his right to privacy of his 160.50 records by bringing this case. (Mem. of Law at 2–3, ECF No. 34-1, Oct. 14, 2024.) If he did, there may be little, if any, harm in the County having accessed them, making preclusion inappropriate.

*    *    *

## CONCLUSION

The Court holds that Howard's motion to unseal is converted into a motion to unseal and compel. The Court **GRANTS** the converted

49

motion, (ECF No. 28), and its requested relief of unsealing "the complete contents of the file related to Plaintiff Darius Howard's underlying criminal prosecution, *People v. Darius Howard*, Ind. No. 2016-154." (Notice of Mot., ECF No. 28, Sept. 30, 2024.) All that Howard requested—official and unofficial files—are unsealed. In so doing, the Court adds this decision to a long line of federal cases declining to force a plaintiff asserting civil rights claims to go first to state court to obtain his or her Section 160.50 records.

The Court further **ORDERS** that these newly unsealed records are confidential pursuant to the protective order entered in this case. (ECF No. 15.)

Additionally, while the Court is unlikely to rule this way in the future, the Court finds that the County's position was substantially justified insofar as the County position was that it would not produce Howard's 160.50 records without a state court order. Thus, Howard is not entitled to attorneys' fees for his converted motion to compel.

Finally, the Court **GRANTS** Howard's application at ECF No. 29 insofar as it seeks leave to bring a motion for sanctions. The Court denies any other relief without prejudice. After Judge Geraci decides the pending motion for judgment on the pleadings, the Court gives the parties leave to do as follows: (1) The County may move to unseal or compel other records and (2) Howard may move for sanctions to preclude the

County from using such records. The parties are **ORDERED** to propose a joint briefing schedule for these motion(s), if either or both motions will be brought. The Court will deny as premature any motion not filed in accordance with the terms of this order.

**IT IS SO ORDERED.**

Dated:    November 25, 2024
          Rochester, NY         _/s/ Mark W. Pedersen_
                                MARK W. PEDERSEN
                                United States Magistrate Judge