UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARIUS HOWARD,

        Plaintiff,

v.                                                Case # 23-CV-6561-FPG
                                                    DECISION & ORDER

CITY OF ROCHESTER, et al.,

        Defendants.

---

## INTRODUCTION

Plaintiff Darius Howard brings this civil rights action against Defendants Jonathan Laureano, Darren Pilato, the City of Rochester, and the County of Monroe. ECF No. 1. Currently before the Court is Defendants Pilato and County of Monroe's ("the moving Defendants") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 20. Plaintiff opposes the motion, ECF No. 25, and the moving Defendants have replied, ECF No. 27. For the reasons that follow, the motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

Motions for judgment on the pleadings under Rule 12(c) command the same standard as a motion to dismiss under Rule 12(b)(6). *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). In addressing a Rule 12(b)(6) motion to dismiss, the Court "assum[es] all well-pleaded, nonconclusory factual allegations in the complaint to be true[,]" *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 33 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), but it is "not required to credit conclusory allegations or legal conclusions couched as factual

1

allegations," *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (internal quotation marks omitted). A claim will be considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court reviewing a 12(b)(6) motion "must take the allegations as true, no matter how skeptical the court may be," the exception being "allegations that are sufficiently fantastic to defy reality as we know it." *Iqbal*, 556 U.S. at 696.

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

**BACKGROUND**

The following facts are derived from Plaintiff's complaint. *See* ECF No. 1. In December 2015, Plaintiff saw a car with the license plate "GTL7204" park on the street in front of his home at 661 Bay Street, Rochester, New York. *Id*. ¶¶ 23-25. A man exited from the parked car and

climbed into the passenger seat of a different car, which then drove away. *Id.* ¶ 25. Shortly after, Laureano, a Rochester Police Department ("RPD") officer, approached Plaintiff's home in his vehicle, switched on his car's spotlight, and shone it in Plaintiff's direction. *Id.* ¶¶ 26-27. While Plaintiff filmed the encounter on his cell phone, Laureano asked to frisk Plaintiff, to which Plaintiff consented, then placed Plaintiff in the back of his patrol car. *Id.* ¶¶ 28-39. Laureano searched the parked car's license plate and discovered it was registered to a resident of Churchville, New York. *Id.* ¶ 41. Laureano entered the locked car via the sunroof and discovered crack cocaine. *Id.* ¶¶ 44-47. Laureano then arrested Plaintiff. *Id.* ¶ 52.

Laureano charged Plaintiff with criminal possession of a controlled substance, aggravated unlicensed operation of a motor vehicle, and an equipment violation for overly-tinted windows on the car. *Id.* ¶ 54. Laureano made several false statements within the charging documents, including that he had witnessed Plaintiff driving the car, had seen Plaintiff sitting inside the car when he approached the residence, and had found Plaintiff's cell phone inside the car. *Id.* ¶¶ 55-63. In February 2016, Plaintiff was indicted on counts of criminal possession of a controlled substance, criminal possession of a controlled substance with intent to sell, and aggravated unlicensed operation of a motor vehicle. *Id.* ¶ 68. At a suppression hearing, Pilato—a Monroe County assistant district attorney ("ADA")—elicited testimony from Laureano claiming that Laureano had returned Plaintiff's cell phone to Plaintiff on the night of the arrest. *Id.* ¶ 76.

In fact, a chain of custody report, not disclosed to the court or Plaintiff, showed that the cell phone had been checked in with the RPD property clerk. *Id.* ¶ 77. It was not until Plaintiff's criminal trial, on the second day of jury deliberations, that Pilato admitted that the cell phone had been in RPD custody. *Id.* ¶ 83. Pilato further claimed that the cell phone had come into his possession after the suppression hearing. *Id.* ¶ 84. In August 2016, the judge reserved on

3

Plaintiff's motion for a mistrial and the jury delivered a verdict of guilty as to the aggravated unlicensed operation and criminal possession charges, while finding Plaintiff not guilty as to criminal possession with intent to distribute. *Id*. ¶¶ 85-87. In September 2016, at sentencing, the judge suppressed the drugs found in the car, dismissed the remaining possession charge, and sentenced Plaintiff to 1 1/3 to 4 years on the aggravated unlicensed operation charge. *Id*. ¶ 88.

Plaintiff appealed to the Fourth Department. *Id*. ¶ 89. The ADA assigned to the appeal, Scott Myles, disclosed the chain of custody report, which revealed that Pilato had taken possession of Plaintiff's cell phone *before* the suppression hearing, not after—contradicting what he had claimed during Plaintiff's criminal trial. *Id*. ¶¶ 90-91. The report further stated that Plaintiff's cell phone had been destroyed in March 2019, while Plaintiff's appeal was pending. *Id*. ¶ 93. Plaintiff brought a Criminal Procedure Law § 440.10 motion, which Myles did not oppose. *Id*. ¶¶ 100-101. In September 2020, the judge granted the motion, vacated Plaintiff's conviction, and dismissed the indictment, concluding that the new evidence showed that Pilato was aware of the cell phone being in RPD custody before the suppression hearing. *Id*. ¶¶ 102-103.

In September 2023, Plaintiff filed the present action, bringing the following claims: (1) a Section 1983 fabricating evidence claim against Laureano; (2) a Section 1983 malicious prosecution claim against Laureano; (3) a Section 1983 destruction of evidence claim against Laureano and Pilato[1]; (4) a Section 1983 conspiracy claim; (5) a deprivation of liberty claim under

---

[1] The moving Defendants also argue that Plaintiff presents a Section 1983 claim against Pilato for the withholding of exculpatory evidence, and that this claim should be dismissed on prosecutorial immunity grounds. ECF No. 20-1 at 9. Plaintiff did not address the moving Defendants' argument as to this alleged claim, and the moving Defendants therefore argue that any withholding-of-evidence claim is abandoned. ECF No. 27 at 1. It is not clear to the Court whether Plaintiff intended to raise such a claim: the portions of the complaint listing claims against Pilato mention only "destroying or directing the destruction" of evidence, not the withholding of it. ECF No. 1 ¶ 182. To the extent that Plaintiff did intend to raise a withholding-of-evidence claim against Pilato, however, the Court agrees that the failure to substantively respond to the motion for judgment on the pleadings as to that point constitutes abandonment of that claim. *See United States v. Weathers*, No. 22-CV-243S, 2024 WL 3431054, at *11 (W.D.N.Y. July 16, 2024) (holding that where a party fails to address arguments in opposition, it "concedes those arguments"); *cf. Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived.").

New York law against the City of Rochester; and (6) a Section 1983 *Monell* claim against the County of Monroe. ECF No. 1.

In August 2024, the moving Defendants filed the instant motion, requesting judgment on the claims against Pilato and the County because (1) Pilato had absolute prosecutorial immunity; and (2) Plaintiff failed to state a *Monell* claim against the County of Monroe.[2] ECF No. 20. Plaintiff responded, arguing that Pilato's destruction of evidence was unrelated to his role as a prosecutor and therefore not protected by immunity, and that Plaintiff adequately stated a *Monell* claim. ECF No. 25. The moving Defendants replied, substantially reiterating their arguments in favor of judgment on the pleadings. ECF No. 31.

## DISCUSSION

The moving Defendants argue that the claims against them should be dismissed. The Court addresses their arguments below.

### 1. Claims Against Pilato

The moving Defendants argue that Pilato has absolute prosecutorial immunity from Plaintiff's claims. For the reasons, below, the Court declines to adopt the moving Defendants' argument at this time.

Absolute immunity "is a complete bar to damages liability under Section 1983." *Alroy v. City of N.Y. Law Dep't*, 69 F. Supp. 3d 393, 402 n.15 (S.D.N.Y. 2014). "[A]bsolute immunity protects a prosecutor from . . . liability for virtually all acts, regardless of motivation, associated with his function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court defined the scope of prosecutorial immunity

---

[2] The motion urges that, in light of these arguments, the Court should "dismiss the Complaint in its entirety." ECF No. 20 at 17. The motion only argues for judgment on the claims against Pilato and the County of Monroe, however, and does not address claims against the other Defendants. Therefore, to the extent that the moving Defendants seek to dismiss the complaint in its entirety, that request is DENIED.

5

"not by the identity of the actor, but by reference to the 'function' performed." *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Under this functional approach, prosecutors are immune from liability for acts that are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. By contrast, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "Thus, to establish immunity, the ultimate question is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' when they engaged in the challenged conduct." *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009) (internal quotation marks omitted); *see also Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir. 2001) ("The cases thus draw a line between the investigative and administrative functions of prosecutors, which are not protected by absolute immunity, and the advocacy functions of prosecutors, which are so protected.").

A prosecutor "has absolute immunity for the initiation and conduct of a prosecution 'unless [he] proceeds in the clear absence of all jurisdiction.'" *Shmueli v. City of N.Y.*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)). To clearly lack jurisdiction, a prosecutor must proceed "without any colorable claim of authority." *Barr*, 810 F.3d at 361. Therefore, even if a prosecutor lacks actual authority to prosecute the relevant conduct, he would still "have absolute immunity in a § 1983 action . . . so long as '[he] ha[s] at least a semblance of jurisdiction' that does not run far afield of [his] job description." *Anilao v. Spota*, 27 F.4th 855, 865 (2d Cir. 2022) (quoting *Barr*, 810 F.3d at 361).

6

The Court identifies two questions bearing on the issue of whether Pilato is entitled to absolute prosecutorial immunity. First, was Pilato still performing any advocacy function at the time the alleged destruction of evidence took place—that is, after Plaintiff's conviction and during the pendency of his appeal? Second, is the destruction of evidence considered an advocacy function at all, as opposed to an administrative or investigative function?

Beginning with the former, the answer to this question at first appears obvious. Courts are clear that "[t]he prosecutor's role as an advocate, and therefore absolute immunity, may extend beyond the initial judicial proceeding." *Bermudez v. City of New York*, No. 11-CV-750, 2013 WL 593791, at *4 (S.D.N.Y. Feb. 14, 2013). This protection extends both backwards, to the pre-indictment stages of litigation, and forward. "[B]y the nature of their office, prosecutors will necessarily remain involved in criminal cases," even after a conviction becomes final. *Warney*, 587 F.3d at 121. Thus, although "the initiation of judicial proceedings serves as the *starting point* for absolute immunity," *Bermudez*, 2013 WL 593791, at *7 n. 7, it "does not serve to delineate the *endpoint* of immunity," *Warney*, 587 F.3d at 122 (emphasis in original, internal quotation marks omitted). A prosecutor's absolute immunity therefore extends beyond the moment of conviction and includes "actions taken while working on a direct appeal and when defending a conviction from collateral attack, insofar as the challenged actions are undertaken in the prosecutor's role as an advocate." *Bermudez*, 2013 WL 593791, at *7 n.7 (internal citations omitted).

Here, however, the exact nature of Pilato's involvement in Plaintiff's case post-conviction is not clear. The complaint describes Pilato's role in the criminal case against Plaintiff, stating that he was the assigned trial prosecutor, ECF No. 1 ¶ 76, and Plaintiff concedes that actions Pilato took during his role as advocate during Plaintiff's trial—such as eliciting false testimony from Laureano—are subject to absolute immunity, ECF No. 25 at 19. However, Plaintiff also argues

7

that Pilato was "not involved in Plaintiff's post-conviction proceedings" and therefore "was not acting as an advocate." *Id*. at 20. In his complaint, Plaintiff states that Pilato destroyed the cell phone in August 2016, "while Plaintiff's direct appeal to the Fourth Department was still pending," and further alleges that it was ADA Myles, not Pilato, who handled Plaintiff's appeal. ECF No. 1 ¶¶ 90, 93. If true, Pilato may have no longer been involved on Plaintiff's case when it reached the appellate level, which would in turn cast severe doubt as to whether his destruction of evidence was "undertaken in the prosecutor's role as an advocate." *Bermudez*, 2013 WL 593791, at *7 n.7

The moving Defendants do not address this question of timing in their motion or reply, and this silence provides the Court with little clarity. At this stage of the litigation, the Court is obliged to accept the allegations presented in the complaint as true, and those allegations state that Pilato was not the ADA assigned to Plaintiff's appeal. *See Iqbal*, 556 U.S. at 696. Perhaps Pilato was, in fact, sufficiently "involved in Plaintiff's post-conviction proceedings" when he elected to destroy Plaintiff's cell phone as to warrant prosecutorial immunity, but the Court is unable to make that conclusion based on the face of the complaint. ECF No. 25 at 20.

The second question—whether destruction of exculpatory evidence is an advocacy function deserving of absolute prosecutorial immunity—also appears obvious on its face. For a prosecutor to willfully destroy exculpatory evidence—as Plaintiff here alleges—seems too reprehensible to warrant protection of any kind. However, absolute prosecutorial immunity is exceptionally broad, extending even "to the falsification of evidence and the coercion of witnesses, the knowing use of perjured testimony, the deliberate withholding of exculpatory information, the making [of] false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial." *Buari v. City of New York*, 530 F. Supp. 3d 356, 378 (S.D.N.Y. 2021) (citations & internal quotation marks omitted) (alteration in original). The broadness of

prosecutorial immunity reflects the concern which prompted the courts to create it in the first place. *Anilao v. Spota*, 27 F.4th 855, 864 n.4 (2d Cir. 2022) ("To be clear, § 1983 itself does not mention absolute prosecutorial immunity (or, for that matter, any immunity). It is a judicially created doctrine that has developed over time."). It was endorsed by courts out of "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties" and thus prevent the prosecutor from "exercising the independence of judgment required by his public trust." *Imbler,* 424 U.S. at 423. Thus, by courts' reckoning, "while absolute prosecutorial immunity may leave an injured party without a remedy, society has found more benefit in insulating the exercise of prosecutorial discretion." *Flagler v. Trainor,* 663 F.3d 543, 547 (2d Cir. 2011).

With this rationale in mind, the circuit courts have disagreed sharply as to whether or not the destruction of exculpatory evidence at various stages of litigation is protected by absolute prosecutorial immunity. *See, e.g., Price v. Montgomery Cnty., Kentucky*, 72 F.4th 711, 720 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2499 (2024)[3] (holding that a prosecutor advising a witness to destroy evidence in violation of a court order "did not exceed the scope of his immunity as a prosecutor"); *Yarris v. Cnty. of Delaware*, 465 F.3d 129 (3d Cir. 2006) (denying prosecutorial immunity where exculpatory evidence was destroyed post-conviction because "decisions to destroy evidence are not related to a prosecutor's prosecutorial function"); *Heidelberg v. Hammer*, 577 F.2d 429, 432 (7th Cir. 1978) (barring plaintiff's claim that prosecutors "destroyed and falsified a line-up report and police tapes of incoming telephone calls" on prosecutorial immunity

---

[3] The Court notes—as cited by Plaintiff—the Supreme Court's decision to deny certiorari in *Price*. In stating the Court rationale for denying certiorari, Justice Sotomayor cautioned that the denial "should not signal tolerance of the prosecutor's conduct," and that "[t]he Court may deny certiorari for many reasons, including that the facts presented by a petition do not clearly or cleanly implicate a division of authority among the lower courts." *Price*, 144 S. Ct. at 2500 n.1. In dissent, Justice Thomas stated that "[i]f this is what prosecutorial immunity protects, the Court may need to step in to ensure that the doctrine does not exceed its quite sparing bounds." *Id*. at 2501 (internal quotation marks omitted).

9

grounds). The parties here acknowledge this circuit split, but do not provide any authority from the Second Circuit taking a firm stance on the issue.

In the absence of clear answers to the two questions outlined above, the Court must proceed with caution. Typically, courts are "encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage . . . because . . . absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Watson v. Grady,* No. 09-CV-3055, 2010 WL 3835047, at *15 (S.D.N.Y. Sept. 30, 2010) (internal quotation marks omitted). However, "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity . . . cannot be decided as a matter of law" at such an early point of the litigation. *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995). The legal question here is a factually sensitive one, for which the moving Defendants bear the burden. *See Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."). Further discovery may help in determining precisely what role Pilato played when Plaintiff's cell phone was destroyed, and whether this was a circumstance in which Pilato served an advocacy function or not. In light of this, the moving Defendants' motion for judgment on pleadings as to Plaintiff's claim against Pilato is DENIED.[4]

---

[4] In their reply brief, the moving Defendants briefly argue that, even if Pilato did not enjoy absolute prosecutorial immunity, (1) the destruction of evidence did not result in harm to Plaintiff; and (2) Pilato is still entitled to qualified immunity. ECF No. 27 at 4-5. The Court declines to consider these arguments, both of which are undeveloped in the present briefing, *see United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), and raised for the first time in the reply brief, *see N.Y.S. Vegetable Growers Ass'n, Inc. v. Cuomo*, 474 F. Supp. 3d 572, 583 (W.D.N.Y. 2020).

In addition, Plaintiff argues that, alternatively, the entire doctrine of absolute prosecutorial immunity should be thrown out as countertextual to the purposes of Section 1983. ECF No. 25 at 21-23. Because the Court has denied the motion for judgment on the pleadings on immunity grounds, it declines to address this argument now, save to note that the Court is not at liberty to disregard the Second Circuit precedent establishing such immunity. Plaintiff's argument is preserved for appeal, should he wish to pursue it.

### 2. *Monell* Claims

Plaintiff raises two claims against the County of Monroe arising from *Monell*: (1) that the Monroe County District Attorney's Office ("MCDAO") had a policy or custom of failing to seek out, disclose, or preserve exculpatory evidence, which resulted in Pilato's destruction of Plaintiff's cell phone; and (2) the MCDAO showed deliberate indifference to Plaintiff's rights by failing to establish policies for the tracking, disclosing, or preserving of exculpatory evidence, and by failing to investigate and punish prosecutors that mishandle such evidence. ECF No. 1 ¶¶ 196-210. The moving Defendants argue that Plaintiff has failed to plausibly allege either claim. ECF No. 20-1 at 10-13. For the reasons below, the Court agrees with the moving Defendants.

"A *Monell* claim—arising from the Supreme Court case of *Monell v. Department of Social Services*, 436 U.S. 658 (1978)—is a way to hold a municipality liable under Section 1983 for the conduct of its employees." *Pugh v. City of New York*, No. 01-CV-0129, 2002 WL 398804, at *2 (E.D.N.Y. Jan. 15, 2002). A municipality may be liable under § 1983 when, by implementation of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers" or through practices that are so "permanent and well settled" as to constitute governmental "custom," the municipality deprives the plaintiff of a constitutional right. *Monell*, 436 U.S. at 690. A municipality may also be liable "under the so-called 'failure to train' theory . . . where the failure to train amounts to deliberate indifference to the rights of persons with whom the [agents of the municipality] come into contact." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "Where a district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker." *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992) (district

11

attorney's office not immune from municipal liability under *Monell* for managerial functions, such as a "decision not to supervise or train ADAs on *Brady*" issues).

A plaintiff can plead a "policy" or "custom" by alleging one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quotations omitted); see *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2015) (summary order); *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012). In addition, to prevail on a *Monell* claim, a plaintiff must also show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Harris*, 489 U.S. at 385; see *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("Governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

Here, Plaintiff has not plausibly alleged a *Monell* claim. The Court has reason for certainty on this, because Plaintiff's allegations in support of his *Monell* claim are virtually identical to those proffered in a prior case also litigated by Plaintiff's counsel: *Miller v. Cnty. of Monroe*, No. 23-CV-6649, 2024 WL 2804435 (W.D.N.Y. May 31, 2024). That case similarly presented *Monell* claims stemming from *Brady* violations by the MCDAO, alleging that such violations were the result of a policy or custom and deliberate indifference. *See Miller*, 2024 WL 2804435, at *1-2. The similarities with Plaintiff's present case are not limited to the claims. In *Miller*, the plaintiff provided a list of 27 cases involving the MCDAO to show the alleged pattern of prosecutorial

misconduct; here, Plaintiff provides an identical list of the same cases, for the same effect.[5] *Compare* ECF No. 1 ¶¶ 140a-140aa, *with Miller*, 2024 WL 2804435, at *5 n.3. Plaintiff's allegations here concerning the existence of a policy or custom within the MCDAO, the knowledge or approval of the MCDAO for Pilato's alleged violations, and the MCDAO's deliberate indifference to establish or properly enforce policies protecting exculpatory evidence are all substantially identical to those presented in the complaint in *Miller*. *Compare* ECF No. 1 ¶¶ 131-160, 196-210, *with Miller*, No. 23-CV-6649, ECF No. 1 ¶¶ 138-181. In *Miller*, the Court determined that Plaintiff's allegations failed to state a *Monell* claim. *See* 2024 WL 2804435, at *3-9.

Plaintiff claims that his claims here are distinguishable because the *Brady* violation in *Miller* could be ascribed to "mere poor judgment or error," whereas Pilato's destruction of evidence was "deliberate and part and parcel" of the MCDAO's "policies of ignoring or suppressing exculpatory and impeachment evidence." ECF No. 25 at 18-19. But the nature of the *Brady* violation is not the crux of whether Plaintiff's *Monell* claim is plausibly alleged. Rather, Plaintiff was obliged to provide sufficient allegations to show that direct, causal link between an

---

[5] The cases are: *People v. Porter*, 136 A.D.3d 1344 (4th Dept 2016); *People v. Wright*, 25 N.Y.3d 769 (2015); *People v. Jones*, 134 A.D.3d 1588 (4th Dept 2015); *People v. Gibson*, 134 A.D.3d 1512 (4th Dept 2015); *People v. Griffin*, 125 A.D.3d 1509, 1510 (4th Dept 2015); *People v. Jurs*, 51 Misc. 3d 653 (County Ct. Monroe Co. 2015); *People v. Carver*, 114 A.D.3d 1199 (4th Dept 2014); *People v. Collier*, 114 A.D.3d 1136 (4th Dept 2014); *People v. Bernard*, 115 A.D.3d 1214 (4th Dept 2014); *People v. Handy*, 20 N.Y.3d 663 (2013; *People v. Gayden*, 111 A.D.3d 1388, 1389-90 (4th Dept. 2013); *People v. Bradley*, 20 N.Y.3d 128 (2012; *People v. Fisher*, 18 N.Y.3d 964 (2012); *People v. Santiago*, 101 A.D.3d 1715 (4th Dept 2012); *People v. Zacher*, 97 A.D.3d 1101 (4th Dept 2012); *People v. Presha*, 83 A.D.3d 1406 (4th Dept 2011; *People v. Stubbs*, 78 A.D.3d 1665 (4th Dept 2010); *People v. Bell*, 66 A.D.3d 1478 (4th Dept 2009); *People v. Davis*, 52 A.D.3d 1205 (4th Dept 2008); *People v. Harris*, 35 A.D.3d 1197 (4th Dept 2006); *People v. Castro*, 784 N.Y.S.2d 466 (4th Dept 2004); *People v. Valentin*, 1 A.D.3d 982, 982-83 (4th Dept 2003); *People v. Hammock*, 182 A.D.2d 1114 (4th Dept 1992); *People v. Burke*, 566 N.Y.S.2d 169 (4th Dept 1991); *People v. Grice*, 100 A.D.2d 419 (4th Dept 1984); *People v. Mott*, 94 A.D.2d 415 (4th Dept 1983); *People v. Ausserau*, 77 A.D.2d 152, 154-55 (4th Dept 1980).

As relevant here, the court in *Miller* concluded that few of these cases involved *Brady* violations by the MCDAO, and thus were insufficient to show a *de facto* policy or custom. *See Miller*, 2024 WL 2804435, at 5 (finding that of the 27 cases, "[o]nly seven . . . involved *Brady* violations, and in one, the *Brady* violation did not result in a reversal of the conviction"); *see also Buari v. City of New York*, 530 F. Supp. 3d 356, 406 (S.D.N.Y. 2021). (holding that 23 cited cases of misconduct occurring over a 20-year period was insufficient to establish a *de facto* custom or policy).

existing policy and a constitutional violation that *Monell* requires. *See Harris*, 489 U.S. at 385. The allegations in *Miller* failed to do this, and Plaintiff's substantially similar allegations fail to do so now. Accordingly, the motion for judgment on the pleadings is GRANTED as to Plaintiff's *Monell* claims.

## CONCLUSION

For the reasons stated herein, the motion for judgment on the pleadings (ECF No. 20) is GRANTED IN PART and DENIED IN PART. Plaintiff's *Monell* claims against the County of Monroe are DISMISSED. Plaintiff's Section 1983 claims against Pilato will proceed.

IT IS SO ORDERED.

Dated: March 19, 2025
       Rochester, New York

                                              _____
                                              HON. FRANK P. GERACI, JR.
                                              United States District Judge
                                              Western District of New York