UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**Darius Howard,**

       Plaintiff,

  v.

**City of Rochester, et al.,**

       Defendants.

**DECISION and ORDER**

23-cv-6561-FPG-MJP

## INTRODUCTION

**Pedersen, M.J.** Fees decisions are often cookie-cutter. Not so here. In his fee application, Plaintiff Darius Howard asks the Court to grapple with its earlier fees decisions and contends that the Court should award an out-of-district rate. The County likewise refers the Court to its earlier decisions and argues that the Court should apply the forum rule, resulting in an in-district rate. But the County does not dispute an in-district rate of $475—a generous rate for this District. Nor does the County dispute the hours that Plaintiff's attorneys billed.

## BACKGROUND

The Court assumes familiarity with its earlier decision and order determining that an award of attorneys' fees is appropriate. (D&O, ECF No. 53, Jan. 24, 2025.) There, the Court found "no substantial justification" to prevent an award of fees. (*Id.* at 16–17.) For the reasons stated in this earlier decision and order, the Court found that the exceptions to a fee award did not apply in this case. (*Id.* at 15–17.) And in no uncertain terms, the Court held that the County's position was unreasonable. (*Id.* at

1

17 ("In sum, the County's position is unreasonable. Thus, the Court finds no substantial justification.").)

But the Court declined to award additional sanctions under Fed. R. Civ. P. 37(b)(2), reasoning that the County "lacks 'a demonstrated history of willful non-compliance with court order[s].'" (*Id.* at 18 (quotation omitted).) The Court added: "Although the Court concludes that the County has 'fail[ed] to obey an order to provide or permit discovery,' it is possible that the County misread (or failed to read) the Court's earlier order." (*Id.* (citing Fed. R. Civ. P. 37(b)(2)(A)).) Taken with the lack of prejudice to Howard, the Court concluded that it would issue only a warning to deter the County from further sanctionable conduct. (*Id.*)

Following the Court's order finding that it should award fees, Plaintiff applied for an out-of-district rate. (ECF No. 55, Feb. 24, 2025.) Defendant Monroe County opposes in part, contending that an out-of-district rate is inappropriate. (ECF No. 56, Mar. 7, 2025.) Plaintiff replied. (ECF No. 57, Mar. 14, 2025.)

## APPLICABLE LAW

The Second Circuit uses the lodestar method as the starting point to determine if a fee is reasonable. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("While the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error."). It is the starting point because "the Supreme Court's directive that fee award calculations be 'objective and reviewable,' implies [that] the district court should at least provide the number of hours and hourly rate it used to produce the

lodestar figure." *Id.* at 166–67 (alteration added) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555 (2010)).

Courts calculate the lodestar or presumptively reasonable fee by "multiply[ing] 'the number of hours reasonably expended' by a 'reasonable hourly rate.'" *Schneider on behalf of A.T. v. City of Buffalo*, No. 18-CV-1431V(SR), 2021 WL 5042502, at *3 (W.D.N.Y. Oct. 29, 2021) (alteration added) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Once calculated, there is a strong presumption that the lodestar figure is reasonable, but the Court may consider additional factors. *See McPhaul v. Insight Mgmt. Partners*, No. 1:19-CV-1392, 2022 WL 542534, at *2 (W.D.N.Y. Feb. 23, 2022) ("Generally, the 'lodestar' creates a presumptively reasonable fee, guided by the *Arbor Hill* factors."). Courts may consider the *Arbor Hill* factors[1] to determine if the lodestar method has produced a reasonable fee. *See McPhaul*, 2022 WL 542534, at *3 ("The court may then adjust the lodestar amount, factoring in the *Arbor Hill* considerations."). Finally, given "the district court's familiarity with the quality of representation and the extent of the litigation, the decision whether to award fees and the amount of fees awarded are issues generally confined to the sound discretion of the court." *Cush-Crawford v. Adchem Corp.*, 94 F. Supp. 2d 294, 301 (E.D.N.Y. 2000), *aff'd*, 271 F.3d 352 (2d Cir. 2001) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

---

[1] Found at *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 186–87 n.3 (2d Cir. 2008).

# DISCUSSION

The Court's earlier decision and order, discussed above, provides the basis for awarding fees under Fed. R. Civ. P. 37(a)(5)(A). Under Rule 37(a)(5)(A), if the court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The Court's earlier decision also discusses the Court's conclusion that the exceptions found in Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii) do not apply. The County has not challenged the Court's earlier order. Thus, the Court turns to calculating fees.

### *The Court will not award Plaintiff's attorneys their proposed out-of-district hourly rates.*

The Court's first task is determining the reasonable hourly rate. *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019). "The reasonable hourly rate is the rate a [ ] client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. When calculating the reasonable hourly rate, the Court assumes that the parties "wish[] to spend the minimum necessary to litigate the case effectively." *Bergerson v. New York State Off. of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011). Yet in this case, the County does not dispute an in-district rate that this Court has given to Plaintiff's counsel in the past: $475 per hour.

However, Plaintiff argues that the "forum rule" should not apply, requesting a far higher rate. Under the forum rule, "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. New York City*

4

*Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). "[D]eviation from the forum rule is only appropriate 'in the unusual case,' in which a litigant demonstrates that her selection of counsel was 'reasonable under the circumstances[.]'" *Id.* at 175. Thus, "when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (quoting *Simmons*, 575 F.3d at 175), *cert. denied*, 144 S. Ct. 822 (2024).

"[T]o overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* (quoting *Simmons*, 575 F.3d at 175). Overcoming this presumption accordingly requires "a particularized showing … of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* (quoting *Simmons*, 575 F.3d at 176).

### Plaintiff fails to show that retaining in-district counsel would have produced a substantially inferior result.

Although Plaintiff may have selected counsel based on "experience-based, objective factors," *Simmons*, 575 F.3d at 176, Plaintiff has not shown that he selected a New York City-based practitioner because "use of in-district counsel would produce a substantially inferior result," *Legends Are Forever, Inc. v. Nike, Inc.*, No. 3:12-CV-1495 LEK/DEP, 2013 WL 6086461, at *3 (N.D.N.Y. Nov. 18, 2013) (rejecting proposed out-of-district rate where the prevailing party had "not set forth any argument that it selected Boston- and Rochester-based law firms because there existed a 'likelihood that use of in-district counsel would produce a substantially inferior result'" (quoting

5

*Simmons*, 575 F.3d at 176)). True, Plaintiff points out that out-of-district attorneys handle many—if not most—wrongful conviction cases in this district.[2]

But this does not necessarily show that retaining a Rochester-based attorney would likely lead to a substantially inferior result. The Court rejects Plaintiff's argument because Plaintiff has made no showing that in-district counsel would have produced an inferior result. *See Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 27 (N.D.N.Y. 2015) (applying forum rule where the plaintiff failed to show "that attorneys within [the] district [were] not competent to handle" the litigation because the plaintiff "appears to have assumed that local counsel could not have achieved a successful result in this action without inquiring into the competence and expertise of attorneys within this district" (alterations added)).

Separately, the County's mistakes predictably led to this Court's earlier decision and order awarding fees. *See New York State Rifle & Pistol Ass'n, Inc. v. Nigrelli*, No. 118CV134BKSATB, 2023 WL 6200195, at *4 (N.D.N.Y. Sept. 22, 2023) (declining to award out-of-district rate where plaintiffs achieved a predictable result based on controlling precedent at the time). Out-of-district counsel is not necessary when the opposing party kneecaps itself.

---

[2] At least the cases with which Howard's counsel is familiar. So, the Court harbors some skepticism about this proposition but will assume it is true for purposes of this decision and order.

### The Court finds that it cannot use the sanctions exception to the forum rule in this case.

This District has sidestepped the forum rule by finding that an out-of-district rate is warranted to sanction the losing party (or its attorneys) and to deter sanctionable conduct:

> [A]ttorney's fees awarded as sanctions are not intended only as compensation of reimbursement for legal services, but also serve to deter abusive litigation practices and, as such, district courts have discretion in determining the amount of an attorney's fee awarded as sanctions.

*Ceglia v. Zuckerberg*, No. 10-CV-00569A F, 2012 WL 503810, at *7 (W.D.N.Y. Feb. 14, 2012). In *Ceglia*, this District thus awarded out-of-district rates under Rule 37, reasoning that "attorney's fees awarded as a sanction" do not require the court "to apply the forum rule[.]" *Id.* at *8 (citation omitted). Notably, *Ceglia* rests on Rule 37(a)(5)(A) *and* Rule 37(b)(2)(C). *Id.* at *4.

Unlike *Ceglia* and similar decisions, this Court expressly disclaimed sanctions under Rule 37(b). Certainly, this Court wants parties to follow its orders. The orders this Court enters are not "frivolous pieces of paper." *Loria v. PJS Hyundai W.*, No. 21-CV-6687-CJS-MJP, 2023 WL 6986250, at *4 (W.D.N.Y. Oct. 24, 2023) (quotation omitted).

If the Court were writing on a blank slate, it might award Howard an out-of-district rate to sanction the County. The Court "unambiguously ordered the County to produce Howard's *entire* file," which the County failed to do and did not ask the Court to clarify. *Howard v. City of Rochester*, No. 23-CV-6561-FPG-MJP, 2025 WL 289068, at *6 (W.D.N.Y. Jan. 24, 2025) (emphasis in original); *see also id.* at *2 ("Finally, despite the unambiguous language of the Court's earlier order, the County did

7

not challenge or seek clarification of that order."). Put differently, because it should have been obvious what the County needed to do after the Court issued its order requiring disclosure of Howard's file, the Court is inclined "to deter" the County's "litigation practices." *Ceglia*, 2012 WL 503810, at \*7 (citing *Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.,* 28 F.3d at 259, 266 (2d Cir. 1994)).

But as the County correctly points out, the Court's earlier order only warned the County about additional sanctions, declining to impose them. *Howard*, 2025 WL 289068, at \*7 ("The Court declines to assess additional sanctions against the County, except as needed under the enforcement mechanism the Court has crafted regarding the deadline for the County to hand over Howard's entire file."). The Court concludes that the sanctions exception stated in cases like *Ceglia*, 2012 WL 503810, and later in *Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-CV-00201S F, 2011 WL 1598973, at \*3 (W.D.N.Y. Apr. 27, 2011) does not apply where, as here, the Court imposes fees exclusively under Rule 37(a)(5).

In this case, the Court awarded fees under Fed. R. Civ. P. 37(a)(5)(A), disclaiming any additional sanction under Fed. R. Civ. P. 37(b). The Court cannot award an out-of-district rate as an additional sanction because the language of Rule 37(a)(5)(A) permits only fee-shifting. To do so would require a textual hook permitting sanctions, like Rule 37(b), which the Court specifically declined to use.[3]

---

[3] The Court is aware of its earlier decision to award an out-of-district rate in *Casaccia v. City of Rochester*, No. 17-CV-6323-FPG-MJP, 2021 WL 4189707, at \*4 (W.D.N.Y. Sept. 15,

Rule 37(a)(5)(A) states that the Court "must … require the party … whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). By its plain language, Rule 37(a)(5)(A) shifts "reasonable" costs and fees to compensate the prevailing party "in making the motion." *Id*. The Rule is a "fee-shifting mandate" based on its language that the Court "must" award expenses. *Wager v. G4S Secure Integration, LLC*, No. 119CV03547MKVKNF, 2021 WL 293076, at *4 (S.D.N.Y. Jan. 28, 2021). But Rule 37(a)(5)(A) says nothing about discretionary sanctions beyond that. Rather, the fee-shifting is a sanction of sorts because it bucks the "American Rule"[4] that each party bears its fees and costs. *See 246 Sears Road Corp. v. Exxon Mobile Corp.*, No. 09–CV–0889, 2013 WL 4506973, at *11 (E.D.N.Y. Aug. 22, 2013) (applying an in-district rate because "[e]ven assuming that *Simmons* does not control fee awards under Rule 37 ... based on all the circumstances of the instant application, using prevailing rates in the Eastern District is appropriate and will adequately serve the compensatory and deterrent objectives of Rule 37(a)(5)(B)").

In so finding, this Court respectfully disagrees with cases that have awarded out-of-district rates as a sanction when computing fees only under Rule 37(a)(5)(A)–(C). *See, e.g., Robbins & Myers, Inc.*, 2011 WL 1598973, at *3 (awarding fees under

---

2021). That appears to be where this Court first awarded Plaintiff's counsel $475 per hour. *Casaccia* rested not on Rule 37(a)(5) alone but also on Rule 37(b). That decision is thus distinguishable.

[4] "The American Rule provides that 'attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule.'" *LiveWire Ergogenics, Inc. v. JS Barkats PLLC*, 645 F. Supp. 3d 290, 299 (S.D.N.Y. 2022) (quotation omitted).

Fed. R. Civ. P. 37(a)(5)(A) yet finding that "[b]ecause the court is calculating the attorneys' fees to be awarded as a sanction, the court is not required to apply the forum rule"). This is an unwarranted, atextual, expansion of the Court's authority to sanction.

Separately, the Court finds distinguishable cases that rest on both Rule 37(a)(5) and Rule 37(b). For example, the *Robbins & Myers* case cited above cites as support for an out-of-district rate other cases resting on Rule 11 or Rule 37(b). Unlike Fed. R. Civ. P. 37(a)(5)(A), which reads like a fee-shifting provision, these other rules expressly provide for sanctions. Thus, *Robbins & Myers* incorrectly relied on inapplicable provisions of the Federal Rules that expressly permit sanctions to sidestep the forum rule and sanction the losing party by imposing out-of-district fees based on Rule 37(a)(5).

For example, in *On Time Aviation, Inc. v. Bombardier Capital*, upon which *Robbins & Myers* relies, the Second Circuit upheld a district court's decision to apply an out-of-district rate as a deterrent and sanction under Fed R. Civ. P. 11. 354 F. App'x 448, 452 (2d Cir. 2009). There, the Second Circuit differentiated between fee-shifting provisions and sanctioning provisions like Rule 11, which is intended to deter baseless filings. *See id*. The text of Fed. R. Civ. P. 11 accords, providing for any "appropriate sanction" designed to "deter repetition of the conduct" but may additionally compensate for fees "directly resulting from the violation." Fed. R. Civ. P. 11(c)(1) & (4). In other words, Rule 11 permits courts to exceed compensation for deterrence. This is because Rule 11 contains language permitting sanctions intended to deter.

Likewise, the other case that *Robbins & Myers* cites rests on Fed. R. Civ. P. 37(b), the provision this Court expressly declined to use in its earlier decision and order—except to warn the County. In that case, the Second Circuit upheld Rule 37(b) sanctions that the District Court imposed based on a party's misbehavior during discovery. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 143, 149 (2d Cir. 2010) (discussing sanctions under Rule 37(b)(2)(A)).

Fed. R. Civ. P. 37(b)(2)(A) allows a court to issue "further just orders" where a party fails to obey an earlier discovery order. This toolbox of sanctions includes unsavory prospects like "directing that the matters embraced in the order … be taken as established for purposes of the action" and entry of "default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i) & (vi). Rule 37(b)(2)(C) requires the Court to award reasonable fees and expenses "[i]nstead of or in addition to" such orders. So, like Rule 37(a)(5)(A), Rule 37(b)(2)(C) demands compensation. But unlike Rule 37(a)(5) it provides courts with the option to sanction beyond compensating the prevailing party.

All this to say, the sanctions exception to the forum rule cannot rest on Rule 37(a)(5) alone when the text of that provision contains nothing suggesting authority to sanction beyond compensating the aggrieved party. As noted, the Court finds distinguishable cases resting in whole or in part on Rule 11 and Rule 37(b) because these provisions do provide for sanctions. *See Legends Are Forever, Inc.*, 2013 WL 6086461, at *3 ("Although there are cases suggesting that the forum rule, while applicable in situations involving fee-shifting statutes, may be overlooked in cases involving

11

sanctions under Rule 11 or 37, the reasoning for excusing the forum rule in cases where a court awards fees as a sanction appears to stem from the deterrent purpose underlying such awards." (collecting cases)). Taken with Plaintiff's failure to meet the standard from *Simmons*, the Court concludes that it must apply the forum rule and that it will thus award an in-district rate.[5]

### **The Court awards Plaintiff's attorneys a rate of $475 per hour—a generous rate for this District.**

The County does not contest an in-district rate of $475 that this Court has previously awarded to Plaintiff's counsel. That is a *generous* rate for this district. *See Ortiz v. Stambach*, 657 F. Supp. 3d 243, 268 (W.D.N.Y. 2023) (finding that the "prevailing hourly rate for an experienced attorney in a civil rights matter is typically no more than $300 per hour"). Recent decisions of this District have awarded $350 per hour to experienced civil rights litigators. *See Ryan v. Town of Tonawanda*, No. 23-CV-351-LJV(F), 2025 WL 997362, at *2 (W.D.N.Y. Apr. 1, 2025) ("Accordingly, while allowing for some inflation effect and taking into account Plaintiff's counsel's extensive litigation experience, the court finds a reasonable hourly rate for counsel's time to be $350 per hour."); *see also Xerox Corp. v. Conduit Glob., Inc.*, No. 21-CV-6467-EAW-MJP, 2024 WL 3548411, at *15 (W.D.N.Y. July 26, 2024) (awarding $500 per hour to a well-regarded Rochester litigator with "*far* more than 20 years of

---

[5] Even if Plaintiff disagrees with the Court's interpretation of Fed. R. Civ. P. 35(a)(5), the Second Circuit has noted that courts do not abuse their discretion by applying the forum rule to awards of fees under Rule 11, for example. *See Kyros L. P.C.*, 78 F.4th at 548 ("We will not disturb the district court's discretionary determination that the principal objectives of the imposition of Rule 11 sanctions … were furthered even after it applied the forum rule to reduce the award." (internal citation omitted)).

12

experience" in a complex commercial case (emphasis in original)), *aff'd*, No. 6:21-CV-06467 EAW, 2025 WL 586244 (W.D.N.Y. Feb. 24, 2025).

The Court accordingly awards Plaintiff's lead counsel a rate of $475 per hour. The County likewise does not contest a $475 per hour rate for co-counsel, which is even more generous for an attorney with less experience. Without citing any authority, Plaintiff's lead counsel asks the Court *not to* award the same rate to co-counsel:

> If the Court were inclined to award $475 per hour for Mr. Rastetter, it is respectfully submitted that Mr. Shields should receive at least $600 per hour. This figure mirrors the $75 reduction that the County seeks from Mr. Rastetter's requested rate of $550[] and preserves the important distinction between an attorney who has handled multiple high-stakes *Monell* matters over more than a decade, and a junior attorney still building his practice.

(Reply at 3, ECF No. 57.) This is not a basis for awarding a higher, out-of-district rate. Nor is this the Court's concern. The Court awards a rate of $475 to both attorneys based on the County's lack of opposition.

Finally, the Court declines to consider Plaintiff's discussion of the Fitzpatrick Matrix because the Court has not awarded an out-of-district rate. That matrix is evidence of an appropriate rate for New York City attorneys and thus need not be considered where, as here, the Court must apply the forum rule. Nor will the Court consider state court decisions from New York City that Plaintiff's counsel has provided. Again, these decisions are evidence of reasonable rates for New York City. They are of little value in computing the appropriate hourly rate for Western New York.

***The Court awards Plaintiff $13,442.50 in attorneys' fees.***

The County does not oppose a total of 28.3 hours that Plaintiff's attorneys spent in relation to the motion to compel. (Opp'n at 1, ECF No. 56 ("Defendant does

not dispute the number of hours submitted and does not request separate rates for Mr. Shields and Mr. Rastetter.").) To the extent that the County challenges Plaintiff's fee application on the basis that "the two motions to compel should not be conflated," this argument is perfunctory and the Court declines to consider it. (*Id.* at 2.)

Thus, the Court accepts Plaintiff's hours expended and computes its award of attorneys' fees as follows:

|  | Hours expended | Hourly rate | Total |
| --- | --- | --- | --- |
| **Elliot Shields** | 12.1 | $475 | $5,747.50 |
| **Clyde Rastetter** | 16.2 | $475 | $7,695 |
| **Total** | 28.3 | N/A | **$13,442.50** |

## CONCLUSION

For these reasons, the Court awards Plaintiff a total of $13,442.50 in attorneys' fees. The Clerk is directed to enter judgment for that amount against Defendant Monroe County. The County is directed to make payment within 30 days of the date of this order.

**IT IS SO ORDERED.**

Dated: April 30, 2025
Rochester, NY

/s/ *Mark W. Pedersen*
MARK W. PEDERSEN
United States Magistrate Judge